# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 5, 2010

No. 08-60870

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

DAVID EARL HUGHES,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Mississippi

Before KING, JOLLY, and STEWART, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

David Earl Hughes was convicted of being a felon in possession of a firearm under 18 U.S.C. § 922(g) and sentenced to 293 months in prison in accordance with the Armed Career Criminal Act ("ACCA") on the basis that he had previously committed three violent felonies. The § 922(g) conviction raises no grounds requriring reversal and we affirm. Our opinion is primarily concerned with whether Hughes's third prior conviction for violating the federal escape statute, 18 U.S.C. § 751(a), is a violent felony, as the district court held, which qualified Hughes for enhanced sentencing under the ACCA. We hold that this previous conviction under § 751(a) was for a violent felony and consequently we affirm the sentence as well as the conviction.

No. 08-60870

I.

On February 16, 2007, Lauderdale County Sheriff's officers responded to a call that Hughes had assaulted his niece and her boyfriend with an axe and had driven away in a Nissan pickup truck to get a gun to kill them. The officers received a description of Hughes's truck and went in search of the vehicle, which they found at his mother's house. There, the officers learned that Hughes had gone to a Winn-Dixie grocery store with his sister in her gold Toyota Corolla. One officer observed the truck and remained there until summoned to assist with Hughes's arrest, which occurred after another officer stopped the Corolla. The officers arrested Hughes and confirmed that he was a felon. Hughes was carrying in his wallet the truck's title, the date of which indicated that he had purchased the truck from his brother that day. An investigator went to Hughes's mother's house. What happened next is disputed. Both sides agree that there was a .22 rifle in Hughes's truck and that the officers ultimately obtained a warrant to seize the rifle after Hughes refused permission to search the truck. The officers testified that they saw a rifle in the passenger seat, but Hughes and two of his witnesses said that the gun was not visible from outside the truck. Instead, they said the deputies opened the door and searched the car, finding the rifle under the seat. While at Hughes's mother's house, the investigator obtained a signed statement from Hughes's sister. She said she saw Hughes sitting in his truck when she arrived at the house. She later testified that she saw him sitting with a gun visible on the passenger's side of the truck while she spoke with him. In any event, the officers then had the truck impounded, at which point the officers obtained a warrant. They contend they searched the truck only after it was towed to the Sheriff's Department.

Hughes was on supervised release at the time, which was subsequently revoked. He was indicted on October 11, with his trial originally scheduled for December 17, which ended in mistrial. Hughes calls the mistrial inexplicable;

2

No. 08-60870

the Government attributes it to a potential conflict. His second trial began on September 8, 2009, after a series of delays due to agreed-upon continuances and a motion granted after an ATF agent who was to testify for the Government was sent to Iraq.

Before trial, Hughes's attorney moved to suppress admission of the rifle into evidence. At a hearing, the district court heard testimony, including testimony from two witnesses for Hughes who said they saw the officers remove the rifle from the car before obtaining a warrant. The two officers contradicted that testimony. Ultimately, the district court ruled that the gun was admissible.

At trial, Hughes stipulated that he had been convicted of a qualifying felony under § 922(g) and that the rifle had traveled in interstate commerce. Hughes did not testify. As explained below, he sought to make his own closing argument to the jury, but the district judge ruled that he could not. The jury convicted Hughes, and the district court ordered Hughes to forfeit the rifle.

The district court sentenced Hughes under the Armed Career Criminal Act. Hughes objected, arguing that his conviction for the federal crime of escape from custody was not a qualifying violent felony. Hughes filed a *pro se* notice of appeal on September 11, and his current lawyer filed another notice of appeal on February 13.

II.

Hughes raises four challenges to his conviction under § 922(g); he also challenges his sentence under the ACCA. First, he argues that the weapon should have been suppressed, because officers lied to obtain a search warrant. Second, he argues that the Government violated his Sixth Amendment right to a speedy trial. Third, he argues that his trial counsel was ineffective in failing to make sure he was able to testify. Fourth, he argues there was insufficient evidence to establish that he possessed the weapon. Finally, he argues that his

No. 08-60870

previous conviction for violating the federal escape statute, 18 U.S.C. § 751(a), is not a violent felony under the ACCA.  We address each in turn.

A.

Hughes first argues that the district court should have suppressed the weapon in this case, because the officers lied to obtain a search warrant.  We review the district court's evidentiary rulings for abuse of discretion, reviewing conclusions of law *de novo* and findings of fact for clear error.  *United States v. Fort*, 248 F.3d 475, 478 (5th Cir. 2001).

Hughes's argument is essentially a fact challenge.  The Government contends that after seeing a rifle in plain view in Hughes's car and having Hughes deny them permission to search, officers obtained a search warrant to seize the weapon.  Hughes says that the officers actually seized the weapon before obtaining a warrant and lied about not having seized it when seeking a warrant.  In support of his version of events, two witnesses testified that officers entered the car, searched it, found the rifle under the seat, and placed it on the seat in plain view before seeking a warrant. Two officers testified to the contrary.  In the case of contradictory testimony, the district court is entitled to decide whom to believe when both present "reasonable views of the evidence." *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985).  We find no error in its decision to admit the rifle.

B.

Hughes next argues that his conviction should be reversed because the government violated his Sixth Amendment right to a speedy trial.  *See* U.S. Const. amend. VI. We review *de novo*. *United States v. Green*, 508 F.3d 195, 202 (5th Cir. 2007).  Although state authorities arrested Hughes on February 16, 2007, the relevant date for speedy trial purposes is the date of his indictment, October 12.  *Id.* at 203. His first trial ended in a mistrial, and his second trial began on September 8, 2008.  When the period between arrest and trial is less

4

No. 08-60870

than one year, we will not reverse absent wilful delay by the government or extreme prejudice to the defendant. *Knox v. Johnson*, 224 F.3d 470, 476 (5th Cir. 2000). Hughes points to no delay, but he argues that he was prejudiced by being held in a federal facility pending trial. As the Government notes, having violated the terms of his supervised release, Hughes's imprisonment was the consequence in any event. We find no extreme prejudice, and consequently, no error.

C.

Hughes next claims that his counsel was ineffective in failing to make sure he could testify at trial. To obtain relief, his lawyer's actions must have been objectively unreasonable, and he must also show prejudice. *United States v. Mullins*, 315 F.3d 449, 453 (5th Cir. 2002). On the record before us, it appears that Hughes's attorney discouraged him from testifying because it would open him to questioning about his extensive criminal record. Although his attorney initially indicated that he wanted to testify, she later informed the court that he had reconsidered. Hughes then proposed to make his own closing argument, a request the district court rejected, because the proposed argument amounted to testimony, not argument. There is not enough in this record to rule on whether Hughes's counsel was ineffective, so he must follow the usual route of collateral attack. *See United States v. Bounds*, 943 F.2d 541, 544 (5th Cir. 1991).

D.

Hughes's final challenge to his § 922(g) conviction is an attack on the sufficiency of the evidence. He contends that the evidence was insufficient to show he had constructive possession of the weapon. We will affirm the jury's verdict if "a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt" and the evidence will be interpreted in a light most favorable to the verdict. *United States v. Stephens*, 779 F.2d 232, 235 (5th Cir. 1985); *United States v. Bell*, 678 F.2d 547, 549 (5th Cir. 1982).

No. 08-60870

Constructive possession exists when the defendant has "dominion or control over an illegal item itself, or dominion or control over the premises in which the item is found." *United States v. De Leon*, 170 F.3d 494 (5th Cir. 1999). The record discloses ample evidence for the jury to find constructive possession, which includes testimony from Hughes's sister that she spoke with him while the gun was sitting next to him in his truck.

### E.

### 1.

We now turn to Hughes's sentence under the ACCA. The law provides a minimum sentence of fifteen years to those who violate § 922(g) and have three prior convictions of a "violent felony" or "serious drug offense." 18 U.S.C. § 924(e)(1). Hughes acknowledges that he has three prior convictions, but he challenges the classification of the third conviction as a "violent felony"—that is, his conviction under the federal escape statute, § 751(a). Our court has previously held that federal escape is a crime of violence under U.S.S.G. § 4B1.2, *United States v. Ruiz*, 180 F.3d 675, 677 (5th Cir. 1999),[1] but Hughes argues that recent Supreme Court decisions call on us to reevaluate that conclusion.

### 2.

The ACCA defines a violent felony as

> any crime punishable by imprisonment for a term exceeding one year . . . that—
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another[.]

---

[1] "We have previously applied our holdings under the residual clause of the ACCA to analyze the definition of crimes of violence under § 4B1.2, and vice versa. *United States v. Mohr*, 554 F.3d 604, 609 n.4 (5th Cir. 2009). That is what our court did for § 751(a) in an unpublished decision, *United States v. Dilks*, 135 F. App'x 653, 655 (5th Cir. 2005).

No. 08-60870

18 U.S.C. § 924(e)(2)(B). The definition provides three separate definitions of violent felony. First, a crime qualifies if "physical force against the person of another" is an element of the offense. *Id.* § 924(e)(2)(B)(i); *see generally Johnson v. United States*, — S. Ct. —, No. 08-6925 (March 2, 2010). Second, a crime qualifies if it is an enumerated offense: burglary, arson, or extortion. 18 U.S.C. § 924(e)(2)(B)(ii); *see generally Taylor v. United States*, 550 U.S. 192 (1990). Third, a crime qualifies if it fits the residual clause, which focuses on "potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii); *see generally United States v. Begay*, 128 S. Ct. 1581 (2008). The question for us is whether § 751(a) is a violent crime under the residual clause.

3.

To determine whether a crime is a crime of violence under the residual clause, we use a categorical method or, in the proper case, a modified categorical method. Sometimes, a court needs only to look to the statute of conviction to identify the crime, but when a defendant's prior conviction is under a statute that identifies several separate offenses, some violent and others not, we may apply the modified categorical method and look to certain other documents, but only to determine "which statutory phrase was the basis for conviction." *Johnson,* — S. Ct. — (slip op. at 10). Once we identify the crime of conviction we classify it as violent or nonviolent. To do so, we consider not how the defendant committed the crime, but how the crime is generally committed. *Chambers v. United States*, 129 S. Ct. 687, 690 (2009). The rule cuts both ways. For example, the categorical method shows no more sympathy for the convicted burglar who breaks into an "unoccupied structure far off the beaten path" than it has for the burglar who intrudes on a family in its home, nor more culpability for the convicted drunk driver who intends harm than the drunk driver who is only negligent and intends no harm. *See Begay*, 128 S. Ct. at 1588 (holding that drunk driving is not a violent felony); *James v. United States*, 550 U.S. 192, 207-

7

No. 08-60870

08 (2007) (rejecting an argument that attempted burglary is not a violent felony because it can be committed without risk of injury).

4.

Turning to the statute before us, *Ruiz* analyzed § 751(a)[2] under the residual clause and held that it was a crime of violence.[3] 180 F.3d at 677. Quoting the Tenth Circuit, the panel reasoned,

> Every escape scenario is a powder keg, which may or may not explode into violence and result in physical injury to someone at any given time, but which always has the serious potential to do so. Indeed, even in a case where a defendant escapes from a jail by stealth and injures no one in the process, there is still a serious potential risk that injury will result when officers find the defendant and attempt to place him in custody.

*Id.* at 677 (quoting *United States v. Mitchell*, 113 F.3d 1528, 1533 (10th Cir. 1997) (alterations to quotation omitted)). Our court subsequently applied *Ruiz* in an unpublished opinion to hold that § 751(a) is a violent felony under the ACCA. *United States v. Dilks*, 135 F. App'x 653, 655 (5th Cir. 2005); *see also*

---

[2] Section 751(a) provides:

> Whoever escapes or attempts to escape from the custody of the Attorney General or his authorized representative, or from any institution or facility in which he is confined by direction of the Attorney General, or from any custody under or by virtue of any process issued under the laws of the United States by any court, judge, or magistrate judge, or from the custody of an officer or employee of the United States pursuant to lawful arrest, shall, if the custody or confinement is by virtue of an arrest on a charge of felony, or conviction of any offense, be fined under this title or imprisoned not more than five years, or both; or if the custody or confinement is for extradition, or for exclusion or expulsion proceedings under the immigration laws, or by virtue of an arrest or charge of or for a misdemeanor, and prior to conviction, be fined under this title or imprisoned not more than one year, or both.

[3] The residual clause of § 4B1.2 is the same as that of the ACCA: "otherwise involves conduct that presents a serious potential risk of physical injury to another."

8

*United States v. Mohr*, 554 F.3d 604, 609 n.4 (5th Cir. 2009) ("We have previously applied our holdings under the residual clause of the ACCA to analyze the definition of crimes of violence under § 4B1.2, and vice versa.").

Since *Ruiz*, however, the Supreme Court has decided two important cases that cause Hughes to question the case's holding.  First, in *Begay*, the Court limited the scope of the residual clause, explaining that only crimes similar to the enumerated offenses qualified, not "*every* crime that 'presents a serious potential risk of physical injury to another.' " 128 S. Ct. at 1585 (quoting 18 U.S.C. § 924(e)(2)(B)(ii)) (emphasis in original).  The ACCA—which is triggered only when a defendant violates § 922(g) by possessing a firearm—targets criminals whose prior crimes "show an increased likelihood that the offender is the kind of person who might deliberately point the gun and pull the trigger." *Id.* at 1586.  Whether a § 922(g) violator is such a criminal is determined by an examination of his past offenses for their violent nature.  The enumerated offenses under the ACCA—burglary, arson, extortion, and crimes involving the use of explosives—generally involve "purposeful, violent, and aggressive" conduct, fulfilling that aim.  *Id.* at 1586.  Drunk driving, which was at issue in *Begay*, did not.  True, one who commits the crime shows recklessness whose results can be deadly.  *Id.* at 1587-88.  But a drunk driving conviction, which, by the nature of the crime, as commonly understood and as usually committed embodies no sort of intent, evinces no propensity for purposeful violence by the felon.  *Id.* at 1587.  For that reason, the Court held that drunk driving was not a violent felony for purposes of the ACCA.

The second case is more factually related to our case today.  Last term, the Court held that the Illinois crime of failure to report to prison was not a violent felony.  *Chambers*, 129 S. Ct. at 693.  Rejecting the Government's argument that failure to report showed "the offender's, special, strong aversion to penal custody" as "beside the point," the Court reiterated that the core inquiry is

No. 08-60870

"whether such an offender is significantly more likely than others to attack, or physically to resist, an apprehender, thereby producing a 'serious potential risk of physical injury.' " *Id.* at 692 (quoting 18 U.S.C. § 924(e)(2)(B)(ii)). Turning to a Sentencing Commission report, the Court noted that over a two-year period, of the 160 people sentenced for failure to report by federal courts, not one person behaved violently, and only 5 (3.1 percent) possessed a weapon. From these data, the Court concluded that failure to report rarely presented a risk, finding the data more persuasive than the three cases in thirty years identified by the government in which failure to report led to violence. *Id.* In that regard, it noted that "[t]he behavior that . . . underlies a failure to report would seem less likely to involve a risk of physical harm than the less passive, more aggressive behavior underlying an escape from custody." *Id.* at 691.

Since *Chambers*, our court has concluded that the Texas crime of unauthorized use of a motor vehicle is not a crime of violence under U.S.S.G. § 4B1.2. *United States v. Armendariz-Moreno*, 571 F.3d 490, 491 (5th Cir. 2009) (per curiam).[4] On the other hand, our court held that the Texas crime of fleeing a peace officer by vehicle is a crime of violence, because the crime is "purposeful, violent and aggressive." *United States v. Harrimon*, 568 F.3d 531, 535 (5th Cir. 2009). The crime is purposeful, in that it requires knowingly fleeing a peace officer; violent, in that the perpetrator is in a vehicle, often at high speeds in crowded surroundings; and aggressive, in that it involves disregarding orders of

---

[4] We do not take those words to mean, and neither party argues that they do mean, that the elements must require such conduct, as that would collapse the residual clause into the first definition of a violent felony, which requires that an element involve physical force. *See* 18 U.S.C. § 924(e)(2)(B)(i). Furthermore, *Chambers* looked to data on how failure to report was actually committed, not what the crime required. 129 S. Ct. at 692.

No. 08-60870

a peace officer.  *Id.* at 535.[5] For the reasons that follow, we do not think *Chambers* and *Begay* require us to reverse our holding in *Ruiz.*

5.

The first step in our analysis is to look to see whether § 751(a) contains multiple crimes.  It does.  It forbids both escape and attempt to escape.  We have said that escape requires "(1) an unauthorized departure, (2) from the custody of the Attorney General or from an institution in which the accused was placed by the Attorney General, (3) where the custody or confinement is by virtue of either an arrest for a felony or conviction of any offense."  *United States v. Edrington*, 726 F.2d 1029, 1031 (5th Cir. 1984); *see also United States v. Bailey*, 444 U.S. 394, 407 (1980) (defining "escape" as "absenting oneself from custody without permission").  As the second element suggests, the statute not only distinguishes between escape and attempted escape, but also the escape's circumstances, including custody of an officer, custody of another employee, and "from any institution or facility in which he is confined."  18 U.S.C. § 751(a).  Thus, employing the modified categorical approach, we consider other documents to determine the crime of conviction.  Turning to the indictment, we can identify Hughes's offense as "escape . . . from an[] institution . . . in which he is confined."[6]

---

[5] We have also considered, in unpublished opinions, cases specifically involving the classification of § 751(a) as a crime of violence.  *United States v. Miles*, 340 F. App'x 982 (5th Cir. 2009) (per curiam); *United States v. Delgado*, 320 F. App'x 286 (5th Cir. 2009) (per curiam).  In *Delgado*, the panel determined that *Ruiz* was consistent with *Chambers*, relying on the distinction in *Chambers* between escapes and failures to report.  *Delgado*, 320 F. App'x at 286-87 (citing *Chambers*, 129 S. Ct. at 687, 691).  In *Miles*, the Government conceded that § 751(a) was not a crime of violence post-*Chambers*, so the panel "accept[ed] the Government's concession . . . [and found] that the district court's career offender determination was erroneous."  *Miles*, 320 F. App'x at 984.

[6] Hughes's indictment alleges that he "did knowingly escape from an institution to which [he was] confined by the Attorney General, to wit: the Madison county Detention Facility in Canton, Mississippi."

11

No. 08-60870

6.

We turn now to whether escape from an institution in which one is confined is a violent felony—that is, whether one would consider the crime itself as creating a situation described in the statutory language as involving "conduct that presents a serious potential risk of physical harm to another"; a crime that suggests that if the defendant possessed a gun, he would likely use it; a crime whose typical commission is purposeful, violent, and aggressive. 18 U.S.C. § 924(e)(2)(B)(ii); *Begay*, 128 S. Ct. at 1586. We hold that it is. Unlike failure to report, escape is typically committed in a purposeful manner, and when these escapes cause injuries, those injuries typically result from intentional action, not negligence or even recklessness. *See Chambers*, 129 S. Ct. at 692 (contrasting failure to report to the enumerated offenses); *Begay*, 128 S. Ct. at 1587 (characterizing drunk driving as a crime of recklessness, not violence). It is violent insofar as the crime includes behavior that is significantly more dangerous behavior than the failure to report considered in *Chambers*. Indeed, the Court acknowledged that "a failure to report would seem less likely to involve a risk of physical harm than the less passive, more aggressive behavior underlying an escape from custody." 129 S. Ct. at 691.[7] Finally, the act is typically aggressive insofar as one who escapes prison is no doubt aware that armed law enforcement will seek him out, potentially ending in a violent confrontation. *See Harrimon*, 568 F.3d at 535. This is precisely the sort of felon who, later possessing a firearm illegally, might "pull the trigger"—the kind of

We do not decide whether the other crimes set out in § 751(a) are also violent felonies.

[7] We note that the Seventh Circuit has concluded that failure to report is covered by § 751(a), *Hart*, 578 F.3d at 677 n.3, but we have never reached such a conclusion. Even if it were included in escape from an institution in which one is confined, failures to report accounted for only 10 percent of the instances of escape crimes the Sentencing Commission considered. U.S. Sentencing Comm'n, *Report on Federal Escape Offenses in Fiscal Years 2006 and 2007* at 7.

No. 08-60870

person the ACCA was intended to reach. *Begay*, 128 S. Ct. at 1586. It was in this sense that we termed escape a "powder keg" in *Ruiz*, and now reaffirm our holding in that case and thus affirm Hughes's sentence.[8]

### III.

We have reviewed Hughes's arguments and finding no reversible error, the judgment of the district court is

AFFIRMED.

---

[8] We acknowledge that the Seventh Circuit came to a different conclusion in *United States v. Hart*, 578 F.3d 674, 681 (7th Cir. 2009). We do not create a circuit split; instead we simply conclude that *Chambers* and *Begay* do not require abrogation of *Ruiz*.