[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 09-15181
_____

D. C. Docket No.09-00035-CR-3-MCR

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 26, 2011
JOHN LEY
CLERK

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TAUREAN PROCH,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(April 26, 2011)

Before TJOFLAT, ANDERSON, and ALARCÓN,* Circuit Judges.

ANDERSON, Circuit Judge:

_____

    *    Honorable Arthur L. Alarcón, United States Circuit Judge for the Ninth Circuit, sitting by designation.

Taurean Proch appeals his 190-month sentence of imprisonment imposed after he pleaded guilty to being a convicted felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g) and 924(e). Proch challenges the application of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), which imposes a mandatory minimum term of 15 years for those defendants convicted previously of three violent felonies or serious drug offenses. Specifically, Proch argues that he did not have the requisite three prior convictions and that the district court erred by consulting materials from the records of his prior convictions that were prohibited by the Supreme Court in Shepard v. United States, 544 U.S. 13, 125 S. Ct. 1254 (2005).

## I. FACTS AND PROCEDURAL BACKGROUND

On April 7, 2009, a federal grand jury returned a two-count indictment against Proch, charging him with solicitation to commit an armed bank robbery and being a felon in possession of a firearm. Proch entered into a plea agreement with the Government whereby the solicitation to commit armed bank robbery was dismissed and he pleaded guilty to being a felon in possession. After the probation office recommended the application of § 924(e), Proch objected and argued that he did not have three qualifying prior convictions, that any qualifying convictions

2

must have been committed on separate occasions, and that he did not meet the requirements for the enhancement. He also argued that the district court could not consult any arrest or booking reports to determine if his prior convictions qualified as predicate convictions for the ACCA.

At the sentencing hearing, the district court heard argument about what sources it could consult when determining if Proch had previously committed three separate violent felonies. The court determined that it was not clear if it could consult all of the record in those convictions. Under prior circuit precedent United States v. Richardson, 230 F.3d 1297 (11th Cir. 2000), courts could consult all of the documents associated with the potential predicate conviction to determine if the § 924(e) enhancement applied. However, the Supreme Court in Shepard has since held that courts, in determining whether a prior conviction was a violent felony, could only examine the charging document, the terms of the plea agreement, and the transcript of a plea colloquy in which the factual basis of the plea was confirmed. Because the district court was uncertain if the Shepard restriction would also apply to the determination of whether the crimes were committed on separate occasions, the court first determined, based only on Shepard-approved sources, that Proch had committed three separate felonies. Then, including those sources that it thought might be precluded by Shepard, the court reached the same

decision.

The court determined that Proch had three qualifying convictions under the ACCA. First, by examining the Shepard-approved documents, the court determined that Proch had committed generic burglaries at two separate businesses on the same day. The court found that Proch completed one burglary before he began the other so they were separate offenses. Turning to the escape conviction, the court found that the escape was separate from the burglaries because Proch had been in the custody of the police at the time of the escape, which demonstrated that the burglary episode was complete. Then, the court examined the Florida escape statute under which Proch was convicted and distinguished it from the escape conviction in Chambers v. United States, 555 U.S. 122, 129 S. Ct. 687 (2009), which the Supreme Court held was not a violent felony under the ACCA and which involved a defendant's failure to report to prison. Looking at the crime to which Proch pleaded guilty, the court reasoned that it was a crime of violence because of the inherent risk of violence involved in an escape from custody.

After resolving these disputed issues, the court sustained one of Proch's objections, and calculated his guidelines range to be 188 to 235 months. The court then sentenced Proch to 190 months' imprisonment.

## II. DISCUSSION

### A.    Separate Offenses

The ACCA defines an armed career criminal as one who has three prior convictions "for a violent felony or a serious drug offense, or both, committed on occasions different from one another . . . ." 18 U.S.C. § 924(e)(1). Since the time of the district court's decision, this court has held that only Shepard-approved records may be consulted when determining if the felonies were committed on separate occasions. United States v. Sneed, 600 F.3d 1326 (11th Cir. 2010). Thus, the precedent that the district court thought might be overruled – United States v. Richardson – has been. But that does not end our inquiry because the district court made alternative holdings that there were three separate offenses and one of those holdings was made using only Shepard-approved records. We now review de novo the district court's conclusion that there were three separate offenses. United States v. Lee, 208 F.3d 1306, 1307 (11th Cir. 2000).

As we have stated in other cases, the ACCA does not require separate indictments but it does require that the crimes be "temporally distinct." United States v. Sweeting, 933 F.2d 962, 967 (11th Cir. 1991). Thus the government is required to show that "'the three previous convictions arose out of a separate and distinct criminal episode.'" Sneed, 600 F.3d at 1329-30 (quoting United States v.

5

Pope, 132 F.3d 684, 689 (11th Cir. 1998)). We have further stated that "[m]ere temporal proximity is ordinarily insufficient to merge multiple offenses into a single criminal episode. Distinctions in time and place are usually sufficient to separate criminal episodes from one another even when the gaps are small." Id. at 1330 (quoting Pope, 132 F.3d at 690). If some temporal break happens between two offenses, we consider them distinct. Id.

The convictions that Proch argues are part of one criminal episode involve two burglary offenses committed on the same day at separate addresses on the same street and an escape committed on the same day. This court has addressed similar fact patterns with differing results that are instructive. In Pope, this court determined that the defendant's burglary of two offices 200 yards apart, committed in immediate succession, constituted separate offenses. The court reasoned that the defendant had successfully completed one burglary and had time to decide to commit the second one. 132 F.3d at 692. By contrast, in Sweeting, the court determined that the defendant had only one qualifying conviction when the defendant had committed one burglary and fled to another home to evade the police. 933 F.2d at 967. The court reasoned that this was a single episode, even though there were separate punishable acts. Id.

Here, gleaning the facts from the Shepard-approved sources, we conclude

6

that the facts are more similar to Pope than to Sweeting.  Proch was convicted of

burglarizing two businesses that are located on the same commercial boulevard but

separated by a side street and parking lots.[1]  While the indictment does not give us

times for each of the burglaries, we note that logic dictates Proch would not flee

across two parking lots and a side street to escape detection, as was the case in

Sweeting.  Rather, the locations of the victim businesses suggest two separate and

distinct criminal episodes where Proch had the opportunity to desist but chose

instead to commit another crime.

Turning to the question of whether the escape constituted a separate crime

from the burglaries, we note first that the charging document states that Proch

escaped while in lawful custody of the county jail or while being transported to or

from there.  This information indicates that Proch had been apprehended and was

either at the jail or being transported to it when he attempted to escape.  Proch's

arrest stopped the criminal episode of the burglary and the fact that he was either in

transit or at the jail demonstrates that this charge does not stem from an effort to

elude the police while completing the burglary.  Rather, based on the limited facts

in the indictment,  we conclude that the burglaries were complete when Proch

---

[1]     We take judicial notice of a map of Fort Walton Beach, Florida, which contains
the addresses that were listed in the indictment.  See Government of the Canal Zone v. Burjan,
596 F.2d 690, 693-94 (5th Cir. 1979) (taking judicial notice of a map under Fed. R. Evid. 201).

7

attempted to escape from police custody.  Therefore, the escape constituted a

separate offense from the burglaries.

B.     Violent Felony

Although we have determined that Proch has three separate offenses, we

must now decide if his escape is a violent felony in order for it to be a qualifying

offense.  Under the ACCA, a violent felony is one that is punishable by a prison

term of over a year that also "(i) has as an element the use, attempted use, or

threatened use of physical force against the person of another; or (ii) is burglary,

arson, or extortion, involves use of explosives, or otherwise involves conduct that

presents a serious potential risk of physical injury to another." § 924(e)(2)(B).  The

last phrase of subsection (ii) is called the "residual clause" and has been the subject

of several recent Supreme Court cases.   In the first of these cases, James v. United

States, 550 U.S. 192, 127 S. Ct. 1586 (2007), the Supreme Court instructed lower

courts to take a categorical approach to the statute to determine if the crime posed a

serious potential risk of physical injury.  Under the categorical approach, courts

look at the "fact of conviction and the statutory definition of the prior offense."

550 U.S. at 202, 127 S. Ct. at 1594 (internal citations and quotations omitted).

This means the court will look at the "elements of the offense . . . without inquiring

8

into the specific conduct of this particular offender." Id. "It is the ordinary case or the generic sense of the state crime that counts." United States v. Harrison, 558 F.3d 1280, 1285 (11th Cir. 2009) (citing Begay v. United States, 553 U.S. 137, 141, 128 S. Ct. 1581, 1584 (2008)). When examining a statute to determine if it falls under the residual clause, courts are also to examine the state statutory scheme's classification of the crime. Id.

Under the second case to examine the residual clause, the Supreme Court added a requirement that the serious potential risk of physical injury in the crime at issue be "roughly similar, in kind as well as in degree of risk posed" by the enumerated crimes. Begay, 553 U.S. at 143, 128 S. Ct. at 1585. The Court clarified that the inclusion of the enumerated crimes "indicates that the statute covers only similar crimes, rather than every crime that 'presents a serious potential risk of physical injury to another.'" Id. at 142, 128 S. Ct. at 1585. At issue in Begay was a Driving Under the Influence ("DUI") conviction that the Court determined was different in kind from the enumerated crimes. Specifically, the Court reasoned that "purposeful, violent, and aggressive conduct" is the sort that "makes [it] more likely that an offender, later possessing a gun, will use that gun deliberately to harm a victim." Id. at 145, 128 S. Ct. at 1586. A DUI, by contrast, was not purposeful, violent or aggressive and instead was a strict liability crime

that had no intent requirement.  Id. at 145, 128 S. Ct. at 1586–87.  This made it dissimilar from the enumerated crimes and thus it did not qualify as a predicate conviction for the purposes of the ACCA.

In the third of the cases, the Supreme Court clarified the categorical approach and determined that a failure to report to a penal institution offense does not fall under the residual clause.  Chambers v. United States, 555 U.S. 122, 129 S. Ct. 687 (2009). Although the failure to report offense was located within the same subsection as the escape from custody offense, the Court treated them as separate offenses.  Id. at __, 129 S. Ct. at 690.  Failure to report to a penal institution, the Court held, is ultimately is a crime of inaction and does not involve the purposeful, violent and aggressive conduct at issue in the enumerated crimes.  Id. at __, 129 S. Ct. at 691.  The Court reiterated that the core inquiry is "whether such an offender is significantly more likely than others to attack, or physically to resist, an apprehender, thereby producing a 'serious potential risk of physical injury.'" Id. at __, 129 S. Ct. at 692 (quoting 18 U.S.C. § 924(e)(2)(B)(ii)).

Our circuit has distilled the analysis to be used in determining if a crime is a violent felony:

> First, what is the relevant category of crime, determined by looking to how the crime is ordinarily committed? Second, does that crime pose a "serious potential risk of physical injury" that is similar in degree to

the risks posed by the enumerated crimes? Third, is that crime similar in kind to the enumerated crimes?

United States v. Harrison, 558 F.3d 1280, 1287 (11th Cir. 2009).

We now turn to the Florida statute at issue. Under Florida Statute § 944.40,

> Any prisoner confined in any prison, jail, private correctional facility, road camp, or other penal institution, . . . working upon the public roads, or being transported to or from a place of confinement who escapes or attempts to escape from such confinement commits a felony of the second degree . . . .

First we note that one violates § 944.40 by escaping from custody or attempting to do so. As the Supreme Court did in Chambers, we distinguish the several separate crimes enumerated in § 944.40: (1) escape from jail; (2) escape from custody while being transported to or from jail; (3) escape from a road camp; (4) escape from custody while working upon the public roads; etc. The charging document in the instant case makes clear that the predicate crime at issue here is either category one, escape from jail, or category two, escape from custody while being transported to or from jail.[2] It is immediately apparent that this is not the same sort of escape as was at issue in Chambers. This is also demonstrated by another Florida statute, § 945.091(4), which proscribes the failure to report to a penal institution and is found

---

[2] Thus, we need not address whether category three or four would constitute a violent felony as they are ordinarily committed. We need not address whether they could be committed as walkaway escapes. See infra note 5 (discussing United States v. Lee, 586 F.3d 859 (11th Cir. 2009), and its holding that a walkaway escape from an unsecured halfway house is not a crime of violence).

11

in a separate code section. Instead, one convicted of violating § 944.40 was already in custody when he escaped or attempted to do so. As the Chambers court noted, an escape from custody involves less passive and more aggressive behavior than a failure to report. 555 U.S. at __, 129 S. Ct. at 691. Thus, the relevant category here – or how the crime is ordinarily committed – is an escape from jail or from the custody of law enforcement while being transported to or from jail.

Next, we turn to the questions of whether a § 944.40 offense presents a "serious potential risk of physical injury" that is similar in kind and in risk to the enumerated offenses. The enumerated offenses in § 924(e)(2)(B)(ii) are "burglary, arson, or extortion," and felonies that involve the "use of explosives."

Other circuits examining this issue have held that escape from custody does pose the same degree of risk and is similar in kind to those named felonies. In United States v. Hughes, 602 F.3d 669 (5th Cir. 2010), the court held that escape from an institution was a crime "whose typical commission is purposeful, violent, and aggressive" and thus fell under the ACCA. Id. at 677. The court reasoned that the crime was violent because it included significantly more dangerous behavior than the failure to report and that it was more likely to involve physical harm. Id. Finally, it concluded, "the act is typically aggressive insofar as one who escapes prison is no doubt aware that armed law enforcement will seek him out, potentially

12

ending in a violent confrontation." Id. Following Begay, the court reasoned that this was precisely the type of felon, who, when illegally armed with a firearm, would use it violently. Id. Similarly, the Eighth Circuit, in a parallel inquiry under U.S.S.G. § 4B1.2(a), determined that an escape from custody was a crime of violence and that it involved stealth, like burglary, that was likely to erupt into violence upon detection. United States v. Furqueron, 605 F.3d 612, 615 (8th Cir. 2010). The court reasoned that the main risk in an escape was not the leaving of custody but the possibility of being discovered in the act of escaping. Id. at 616. The main risk in a burglary was similar: it was not the breaking in but the possibility of encountering another person. Id.; see also United States v. Willings, 588 F.3d 56, 59 (1st Cir. 2010) (a § 4B1.2(a) case holding that an escape from jail – i.e. an escape from secure custody – is a qualifying crime of violence).[3]

We agree with the conclusions of the other circuits that the predicate crime here involves a crime similar in risk and similar in kind to the enumerated crimes.

---

[3] This court has examined the same Florida statute under 18 U.S.C. § 3559(c)(2)(F)(ii), which asks if a prior conviction is a "serious violent felony." United States v. Sanchez, 586 F.3d 918, 931 (11th Cir. 2009). Like ACCA, that statute enumerates some crimes as serious violent felonies but also includes a catch-all phrase: that the crime, "by its nature, involves a substantial risk that physical force against the person of another may be used in the course of committing the offense." The court in Sanchez determined that a violation of § 944.40 did qualify as a serious violent felony and distinguished Chambers, reasoning that an escape was quite different than a nonviolent failure to report and pointing out Sanchez's purposeful behavior in planning the escape. Id. at 932 n.33.

13

It involves either an escape from jail or an escape from the immediate custody of an officer transporting the person to or from jail. Escapes from custody, like burglary, will almost always involve the police attempting to apprehend the escapee and are likely to cause "an eruption of violence" upon discovery. Furqueron, 605 F.3d at 615. Such an eruption clearly presents a serious potential risk of physical injury. Also like burglary, escape from custody is a stealth crime that involves a high degree of recklessness.[4] Like burglary, arson, and the use of explosives, escape from custody is purposeful, violent and aggressive because it involves a choice that will almost certainly be responded to with force, and potentially violent force, by the police. We conclude, therefore, that a felon who risks escape from custody is likely to use an illegally possessed firearm in a violent way and that escape from custody is therefore a violent felony under the ACCA.[5]

---

[4] Our decision in Harrison, 558 F.3d 1280, is readily distinguishable. There, the Florida statute distinguished between three categories: (1) willful failure to stop a vehicle or willful fleeing after being ordered by an officer to stop; (2) willful fleeing afer the police vehicle has activated its lights and siren; and (3) the conduct in category two, aggravated by either the addition of a high speed chase or wanton disregard for the safety of persons or property. Id. at 1291. Thus, the conduct at issue in Harrison, category two, expressly excluded recklessness. Id. at 1293. Indeed, we concluded that the category two crime "suggest[ed] an unwillingness to engage in violent conduct." Id. at 1296. Unlike the conduct at issue in Harrison, escaping from the custody of a penal institution or from the immediate custody of an officer while being transported to or from a penal institution will ordinarily involve a high degree of recklessness, and a virtual invitation to violence.

[5] Our decision today is also readily distinguishable from United States v. Lee, 586 F.3d 1280 (11th Cir. 2009). There, we held that "a non-violent walkaway escape from unsecured custody [a halfway house] is not sufficiently similar in kind or degree of risk posed to the

Having determined that escape from custody under Fla. Stat. § 944.40 is a violent felony under the ACCA, we affirm the district court's application of the § 924(e) enhancement to Proch's sentence.

AFFIRMED.

---

ACCA's enumerated crimes." Id. at 874. We expressly distinguished the category of crimes at issue in this case: "'the circumstances apparent in a walkaway escape are of an entirely different order of magnitude than escapes from jails and prisons. Residents of halfway houses have certain privileges of ingress and egress, do not live behind concrete walls and barbed wire, and are not under constant surveillance by armed guards.'" Id. at 873 (quoting approvingly United States v. Piccolo, 441 F.3d 1084, 1088 (9th Cir. 2006)).