[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-14010
Non-Argument Calendar
_____

D.C. Docket No. 1:13-cr-20182-FAM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FRED HOLTON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(July 7, 2014)

Before PRYOR, MARTIN, and ANDERSON, Circuit Judges.

PER CURIAM:

Fred Holton appeals his conviction and 180-month sentence after pleading guilty to being a felon in possession of a firearm in and affecting interstate commerce, in violation of 18 U.S.C. § 922(g).  Holton pled guilty pursuant to a plea agreement, which included a sentence appeal waiver.  However, Holton preserved his ability to appeal the sentence if it "exceed[ed] the maximum permitted by statute."  During the plea colloquy and at sentencing, Holton objected to the application of the Armed Career Criminal Act ("ACCA") enhancement, arguing that the *Shepard*[1]-approved documents did not establish that his prior violent felony convictions for attempted first degree murder and manslaughter occurred on separate occasions.  The district court determined that the offenses occurred on separate occasions and sentenced Holton to 15 years' imprisonment pursuant to the ACCA.

On appeal, Holton argues that the district court erred in sentencing him as an armed career criminal because the government did not establish by a preponderance of the evidence that his two prior violent felony convictions occurred on separate occasions.  He asserts that his ACCA challenge is not barred by his sentence appeal waiver because his 15-year sentence is above the otherwise applicable 10-year statutory maximum for a § 922(g) offense.  Holton further argues that his sentence under the ACCA violates his Fifth and Sixth Amendment

---

[1]    *Shepard v. United States*, 544 U.S. 13, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005).

2

rights because his prior violent felony convictions were not alleged in the indictment. He also contends for the first time on appeal that his conviction under § 922(g) is unconstitutional both facially and as applied to him as exceeding Congressional power under the Commerce Clause. The government asserts that Holton's ACCA argument is barred by his sentence appeal waiver. After consideration of the parties' briefs, we affirm Holton's conviction, but vacate and remand for resentencing.

## I.

We review the validity of a sentence appeal waiver *de novo*. *United States v. Johnson*, 541 F.3d 1064, 1066 (11th Cir. 2008). We have rejected a hyper-technical reading and "rigidly literal approach" to the construction of the language in a plea agreement. *United States v. Jeffries*, 908 F.2d 1520, 1523 (11th Cir. 1990). The agreement should be read in light of the negotiations and should not be interpreted to directly contradict an oral understanding between the parties. *Id.* However, ambiguities in plea agreements are construed against the government. *Id.*

A sentence appeal waiver will be enforced if it was made knowingly and voluntarily. *United States v. Bushert*, 997 F.2d 1343, 1351 (11th Cir. 1993). To establish that the waiver was made knowingly and voluntarily, the government must show either that (1) the district court specifically questioned the defendant

3

about the waiver during the plea colloquy, or (2) the record makes clear that the defendant otherwise understood the full significance of the waiver. *Id.* If valid, an appeal waiver cannot be altered by comments made by the district court during sentencing. *See United States v. Howle*, 166 F.3d 1166, 1168-69 (11th Cir. 1999) (noting that district courts lack authority to modify the terms of a plea agreement).

Pursuant to 18 U.S.C. § 924, a person who violates 18 U.S.C. § 922(g) is subject to ten years' imprisonment. 18 U.S.C. § 924(a)(2). A person who violates § 922(g) and has 3 previous convictions for a violent felony or a serious drug offense, or both, committed on occasions different from each other is subject to a mandatory minimum of 15 years' imprisonment. 18 U.S.C. § 924(e)(1).

In *United States v. Jones*, we recently addressed a defendant's challenge that he did not have the requisite number of predicate offenses for the ACCA enhancement. *United States v. Jones*, 743 F.3d 826 (11th Cir. 2014). We noted that Jones's 15-year sentence exceeded the typical 10-year maximum sentence under 18 U.S.C. § 924(a)(2) because Jones's sentence was enhanced pursuant to the ACCA. *Id.* at 827. In a footnote, we explained that Jones's plea agreement included a general appeal waiver but reserved his right to appeal "any sentence in excess of the statutory maximum." *Id.* at 828 n.2. We stated that we had previously denied the government's motion to dismiss pursuant to the appeal waiver because, without the ACCA enhancement, the maximum sentence Jones

4

could have received under the statute was ten years' imprisonment. *Id.* Because the ACCA enhancement resulted in a 15-year sentence, we stated that Jones's sentence was "in excess of the statutory maximum" and thus fell within the appeal waiver exception. *Id.*

As an initial matter, Holton does not contest the validity of his sentence appeal waiver. In any event, the district court specifically questioned Holton about the waiver during the plea colloquy, and the waiver was expressly stated in the plea agreement, which Holton signed and acknowledged he understood and had discussed with his attorney. *See Bushert*, 997 F.2d at 1351. Thus, the waiver is enforceable because it was knowing and voluntary. *See id.*

Nevertheless, Holton's challenge to the applicability of the ACCA enhancement is not barred by the appeal waiver because it falls within the exception providing that Holton could appeal if his sentence "exceeds the maximum permitted by statute." In *Jones*, we addressed the merits of the defendant's ACCA challenge and noted that we had previously denied the government's motion to dismiss pursuant to the defendant's appeal waiver because the defendant's challenge to the ACCA enhancement fell within the exception permitting him to appeal a sentence "in excess of the statutory maximum." *Jones*, 743 F.3d at 828 n.2. Although our discussion from *Jones* is arguably dicta, it is nevertheless persuasive.

5

Holton's appeal waiver reserved the right to appeal any sentence that "exceeds the maximum permitted by statute." The statutory maximum for the offense Holton pled guilty to—§ 922(g)(1)—is 10 years' imprisonment. 18 U.S.C. § 922(g)(1); 18 U.S.C. § 924(a)(2). Holton's claim on appeal is that the district court erroneously applied the ACCA enhancement, and in doing so sentenced him above the statutory maximum. Thus, Holton's challenge falls within the appeal waiver exception because it is a claim that his 15-year sentence "exceeds the maximum permitted by statute." *See Jones*, 743 F.3d at 828 n.2.

At a minimum, the plea agreement is ambiguous as to whether the appeal waiver bars Holton's claim. The plea agreement contains language acknowledging that "if [Holton] is subject to [the ACCA]," the district court may impose a sentence up to life imprisonment. This conditional reference to the ACCA enhancement implies that the parties disagreed at the time of the plea agreement about whether the ACCA applied, yet the appeal waiver provision of the plea agreement does not mention the ACCA or expressly state whether such a claim comes within the waiver. Moreover, the plea agreement never actually refers to an ACCA-enhanced sentence as "the maximum permitted by statute." In light of the ACCA's effect on the applicable statutory maximum, and the appeal waiver's silence as to the ACCA, despite the parties' disagreement about its applicability, Holton at least could have reasonably believed that the appeal waiver did not

6

extend to this claim.  Thus, the appeal waiver is ambiguous and ambiguities are construed against the government.  *See Jeffries*, 908 F.2d at 1523.

The fact that the district court during the plea colloquy repeatedly told Holton that its decision would be final and that Holton would be stuck with whatever decision it made does not change the result.  *See Howle*, 166 F.3d at 1168-69 (concluding that district court's encouragement of defendant, who had waived right to appeal, to file an appeal "had no effect on the terms of a previously approved plea agreement").  Therefore, Holton did not waive his right to appeal the ACCA enhancement, and we will address the merits of Holton's ACCA challenge.

## II.

Whether prior violent felony convictions occurred on different occasions from one another under the ACCA is a question of law that we review *de novo*. *United States v. Canty*, 570 F.3d 1251, 1254-55 (11th Cir. 2009).  We review constitutional errors in sentencing *de novo*.  *United States v. Paz*, 405 F.3d 946, 948 (11th Cir. 2005).  The burden is on the government to prove that the prior convictions "arose out of a separate and distinct criminal episode."  *United States v. Sneed*, 600 F.3d 1326, 1329 (11th Cir. 2010) (quotation omitted).  We have stated that sentencing enhancements need only be proven by a preponderance of the evidence.  *United States v. Turner*, 626 F.3d 566, 572 (11th Cir. 2010).

Under the ACCA, a defendant convicted pursuant to 18 U.S.C. § 922(g) is subject to a mandatory minimum sentence of 15 years' imprisonment if he has 3 prior convictions for a violent felony or serious drug offense "committed on occasions different from one another." 18 U.S.C. § 924(e). To determine the nature of a prior conviction, a court "is generally limited to examining the statutory definition [of the offense of the prior conviction], charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Shepard*, 544 U.S. at 16, 125 S.Ct. at 1257. "[D]istrict courts may determine both the existence of prior convictions and the factual nature of those convictions, including whether they were committed on different occasions, so long as they limit themselves to *Shepard*-approved documents." *United States v. Weeks*, 711 F.3d 1255, 1259 (11th Cir.), *cert. denied*, __ U.S. __, 134 S.Ct. 311, 187 L.Ed.2d 220 (2013) (citing *Sneed*, 600 F.3d at 1332-33).

Section 924(e)'s different-occasion requirement requires that the three convictions were temporally distinct. *Sneed*, 600 F.3d at 1329. When evaluating whether crimes were committed on different occasions, we have held that "so long as predicate crimes are successive rather than simultaneous, they constitute separate criminal episodes for purposes of the ACCA." *United States v. Pope*, 132 F.3d 684, 692 (11th Cir. 1998). As long as some temporal "break" exists between

8

offenses, they will be deemed to have occurred on separate occasions. *Id.* at 689-90. "Mere temporal proximity is ordinarily insufficient to merge multiple offenses into a single criminal episode. Distinctions in time and place are usually sufficient to separate criminal episodes from one another even when the gaps are small." *Id.* at 689.

In *Weeks*, we rejected the defendant's argument that the *Shepard*-approved documents were insufficient to show that his three prior burglary convictions—one committed on November 27 and two committed on December 2—were committed on different occasions. *Weeks*, 711 F.3d at 1258-61. We concluded that the first burglary was temporally distinct from the other two because it occurred five days before the other two offenses. *Id.* at 1261. Moreover, the fact that the charging documents showed that the offenses involved three separate structures and victims was enough to support the district court's conclusion that the burglaries were separate criminal episodes. *Id.* We specifically stated that the fact that the December 2 burglaries occurred within close proximity to each other was not determinative, as small gaps in time and place are enough to establish separate offenses. *Id.*

Similarly, in *United States v. Proch*, the *Shepard*-approved documents showed that the defendant committed two burglaries on the same day at two separate businesses on the same street, as well as an escape on the same day. 637

F.3d 1262, 1265 (11th Cir. 2011). We concluded that the burglaries were two separate and distinct criminal episodes. *Id.* at 1265-66. Although the indictment did not list the times that each of the offenses occurred, we noted that the two businesses were separated by a side street and parking lot, and that the locations of the businesses indicated that Proch had the opportunity to desist or chose instead to commit another crime. *Id.* at 1266. Moreover, Proch's escape also constituted a separate crime because the charging document established that he was in lawful custody at the time of the escape. *Id.* Thus, we reasoned that Proch was either in jail or in transport when he attempted escape, and that his arrest had stopped the burglary episode. *Id.*; *see also Pope*, 132 F.3d at 692 (holding that the burglary of 2 offices on the same day, separated by 200 yards, constituted 2 predicate offenses under the ACCA because the defendant had the opportunity to desist after completing the first burglary but chose to commit the second burglary).

On the other hand, in *United States v. Canty*, we held that the records of conviction for a defendant's prior felony convictions for escape and obstructing an officer did not establish that the offenses were two separate and distinct episodes under the ACCA. 570 F.3d 1251, 1255 (11th Cir. 2009). We reasoned that both offenses occurred on the same day and were evidenced by the single judgment of conviction, and there was no indication that they occurred successively rather than simultaneously. *Id.*; *see also United States v. Sweeting*, 933 F.2d 962, 967 (11th

10

Cir. 1991) (holding that the burglary of one home, followed by fleeing to another home to evade police, constituted one criminal episode for purposes of the ACCA).

Here, the district court erred in determining that Holton qualified for the ACCA enhancement because the government did not establish by a preponderance of the evidence that Holton had three prior violent felony convictions that occurred on different occasions. Holton does not contest that his three prior convictions are violent felonies, but argues that the *Shepard*-approved documents do not show that his attempted first degree murder and manslaughter convictions occurred on different occasions. To determine whether Holton's prior convictions occurred on different occasions, we may only look at *Shepard*-approved documents, which in this case, included two informations, two judgments, and a plea colloquy for Holton's manslaughter conviction. *See Weeks*, 711 F.3d at 1259.

The *Shepard*-approved documents, however, do not establish by a preponderance of the evidence that the offenses occurred on occasions different from one another. Neither the plea colloquy nor either judgment provides any factual detail about the offenses. Both informations state that the offenses occurred on September 26, 1989. The information for Holton's attempted first degree murder conviction, which also included charges for aggravated battery, aggravated assault, shooting a deadly missile into a building, and unlawful possession of a

11

firearm during the commission of a crime, was filed on October 18, 1989.  It states that Holton and two codefendants, Moore and Jackson, attempted to kill Alvin Simmons by shooting into a building located at 2285 Northwest 50th Street, Miami, Florida.  The information for Holton's manslaughter conviction was filed on May 28, 1991.  This information does not specify a location, but states that Holton and three codefendants, Moore, Jackson, and Shaw, provoked a shootout with Robert Simmons, causing Robert Simmons to fire a gun to protect himself and/or others, which resulted in the death of Anne Bell.

While we have held that two offenses occurring on the same day are separate offenses for ACCA purposes, we have only done so where there has been some indication of a temporal break in the offenses (*i.e.*, different locations or different times).  *See Weeks*, 711 F.3d at 1359-61; *Proch*, 637 F.3d at 1265-66; *Pope*, 132 F.3d at 692.  Unlike *Weeks*, where the charging documents showed that the three burglary offenses involved three different structures and victims, as well as the fact that one of the burglaries occurred five days prior to the other two burglaries, the charging documents in the instant case do not establish the time or location of both offenses.  *Weeks*, 711 F.3d at 1359-61.  Similar to the present case, the *Shepard*-approved documents in *Proch* did not list the time that the two offenses occurred.  *See Proch*, 637 F.3d at 1266.  However, in *Proch* it could be inferred from the *Shepard* documents that a temporal break existed between the offenses because the

12

offenses occurred at two different locations separated by a parking lot and a side street.  *See id.*

Based on the limited information in the charging documents in the present case, it is not clear whether a temporal break existed between the two offenses.  It is plausible the offenses occurred simultaneously given that the offenses occurred on the same date.  Moreover, Holton was charged in one information with attempting to kill Alvin Simmons and in the other information Holton was provoking a shootout with Robert Simmons (same surname as Alvin), who returned gunfire to protect himself and others.  It is possible Robert Simmons was attempting to protect Alvin Simmons.  Furthermore, three of the same defendants were charged with both the attempted first degree murder and manslaughter, thereby indicating that the offenses could have occurred at the same time.  Although there were different victims, the same surname makes it likely that the two victims were related, and although there was an additional co-defendant in the manslaughter case, all of Holton's co-defendants in the attempted murder case were also charged in the manslaughter case.  Based on this information, it is not more likely than not that the offenses occurred successively.

The government argues that the offenses were successive because there are two separate informations, separate proceedings, and separate judgments.  In *Canty*, we held that the two offenses were not separate and noted that there was a single

judgment of conviction.  *See Canty*, 570 F.3d at 1255.  However, we also emphasized that the offenses occurred on the same date and that there was no other indication of whether the offenses occurred simultaneously or successively.  *See id.* The present case involved two separate judgments of conviction, but like *Canty*, the two offenses occurred on same date.  Moreover, there are many potential reasons, other than differences in time and place of commission, that offenses may have been charged in different proceedings—here, for example, the State may have delayed charging the manslaughter case to see if the victim would die from her injuries.

Because it is not clear from the *Shepard*-approved documents whether the offenses occurred simultaneously or successively, the government has not established by a preponderance of the evidence that Holton's prior violent felony convictions occurred on occasions different from one another.  *Turner*, 626 F.3d at 572.  We need not address Holton's argument that his sentence under the ACCA violates his Fifth and Sixth Amendment rights because the district court erred in sentencing him as an armed career criminal.   However, his argument is foreclosed by binding precedent in any event.  *See Almendarez-Torres v. United States*, 523 U.S. 224, 226-27, 118 S.Ct. 1219, 1222, 140 L.Ed.2d 350 (1998) (holding that, for sentencing enhancement purposes, a defendant's prior conviction does not have to be alleged in the indictment or submitted to a jury and proved beyond a reasonable

doubt).  Because the district court erred in sentencing Holton under the ACCA, we vacate and remand for resentencing.

## III.

We review the legal question of a statute's constitutionality *de novo*.  *United States v. Tinoco*, 304 F.3d 1088, 1099 (11th Cir. 2002).  However, challenges raised for the first time in a criminal appeal are reviewed for plain error.  *See United States v. Schultz*, 565 F.3d 1353, 1356 (11th Cir. 2009).  Under the plain error standard, the defendant must show: "(1) error, (2) that is plain, and (3) that affects substantial rights."  *United States v. Moriarty*, 429 F.3d 1012, 1019 (11th Cir. 2005).  When all three of these conditions are met, this Court will find that an error has occurred only if the error "seriously affects the fairness, integrity or public reputation of judicial proceedings."  *Id.* (quotation and alteration omitted).  "An error is not plain unless it is contrary to explicit statutory provisions or to on-point precedent in this Court or the Supreme Court."  *Schultz*, 565 F.3d at 1357.

Pursuant to § 922(g)(1), it is unlawful for a convicted felon "to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g)(1).  We have repeatedly upheld § 922(g)(1) against facial attacks as a constitutional exercise of Congress' power under the Commerce Clause.  *See*

15

*United States v. Scott*, 263 F.3d 1270, 1273 (11th Cir. 2001) (holding that "the

jurisdictional element of the statute, *i.e.*, the requirement that the felon 'possess in

or affecting commerce, any firearm or ammunition,' immunizes § 922(g)(1) from

[a] facial constitutional attack"); *see also United States v. Dupree*, 258 F.3d 1258,

1259-60 (11th Cir. 2001); *United States v. Nichols*, 124 F.3d 1265, 1266 (11th Cir.

1997); *United States v. McAllister*, 77 F.3d 387, 389-90 (11th Cir. 1996).

We have also upheld § 922(g)(1) against as-applied challenges where the

government has shown a "minimal nexus" between the firearm and interstate

commerce. *McAllister*, 77 F.3d at 390.  A showing that the firearm was

manufactured in one state and traveled in interstate commerce to another state

satisfies the "minimal nexus" test.   *Scott*, 263 F.3d at 1274.

We review Holton's argument for plain error because he raises it for the first

time on appeal.[2]   His argument fails because as he readily concedes in his

appellate brief, his facial challenge to 18 U.S.C. § 922(g)(1) is foreclosed by our

precedent upholding § 922(g) under similar facial attacks.  *See Scott*, 263 F.3d at

1273.  Holton's as-applied challenge to § 922(g) is also unavailing.  At the plea

---

[2] Holton's guilty plea did not waive his constitutional challenge to § 922(g) because his challenge necessarily implicates the district court's subject matter jurisdiction, challenges to which cannot be waived. *See United States v. Smith*, 532 F.3d 1125, 1127 (11th Cir. 2008) (stating that a guilty plea waives all non-jurisdictional challenges to a conviction); *see also United States v. De La Garza*, 516 F.3d 1266, 1271 (11th Cir. 2008) (holding that challenges to a district court's subject matter jurisdiction cannot be waived); *but see Dupree*, 258 F.3d at 1259 (stating in *dicta* that this Court could conclude that appellant waived his constitutional challenge to 18 U.S.C. § 922(g)(1) because it was raised for first time on appeal).

colloquy, he pleaded guilty to being a felon in possession of a firearm in and affecting interstate and foreign commerce.  He also agreed with the government's recitation of the facts, including that the firearm was manufactured outside the state of Florida and therefore moved in interstate commerce.  As such, this was sufficient to show a "minimal nexus" between the firearm and its connection to interstate commerce.  *See McAllister*, 77 F.3d at 390.  Therefore, § 922(g)(1) is constitutional on its face and as applied to Holton.  Accordingly, we affirm Holton's conviction, vacate his sentence, and remand for resentencing.

**AFFIRMED IN PART, VACATED AND REMANDED IN PART.**