IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 9, 2007

Charles R. Fulbruge III
Clerk

No. 07-60184

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

HORRIS BERNARD GREEN,

Defendant - Appellant.

Appeal from the United States District Court
for the Southern District of Mississippi

Before REAVLEY, SMITH, and GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Horris Bernard Green appeals his convictions and sentence for charges arising from his fraudulent procurement of American Red Cross disaster relief, which he obtained in the wake of Hurricane Katrina. This appeal primarily raises speedy trial issues, both under the Speedy Trial Act, 18 U.S.C. §§ 3161–3174, and the speedy trial clause of the Sixth Amendment to the United States Constitution. For the following reasons, we AFFIRM the judgment of the district court.

I

Not long after Hurricane Katrina, on September 9, 2005, Green applied to the American Red Cross in Mississippi for disaster assistance, claiming that his name was John Gross and that he and his family—a wife and three children—resided in New Orleans at the time of Hurricane Katrina and were rendered homeless as a result of the storm. In fact, Green was not John Gross, was not accompanied by any wife or children, and was not residing in New Orleans when Hurricane Katrina made landfall. As a result of these misrepresentations, Green received a Red Cross debit card valued at $1,565, with which he later withdrew $500 from an automated teller machine in Jackson, Mississippi on September 10, 2005. Later that evening, after obtaining the $500, Green falsely identified himself as John Gross to a state law enforcement officer while attempting to reenter the Red Cross hurricane shelter. In doing so, Green presented the state officer with his Red Cross debit card and a counterfeit Social Security card in the name of John Gross.

Based on these events, Green was eventually indicted for and pleaded guilty to two counts of wire fraud, in violation of 18 U.S.C. § 1343, and one count for the misuse of a Social Security number, in violation of 42 U.S.C. § 408(a)(7)(B). Green's appeal, however, focuses not on these underlying offenses, but rather on the alleged periods of delay that preceded his federal indictment on June 21, 2006, and later his guilty plea on December 5, 2006.

After falsely identifying himself to the state officer, Green—reportedly intoxicated—was arrested when he refused to leave the shelter. Green was arrested on September 10 or 11, 2005 for state charges of public intoxication, false pretenses, and violation of probation. After booking, he was placed in the custody of the Hinds County Detention Center.

After that, the Hinds County Sheriff's Office contacted the United States Attorney's Office for the Southern District of Mississippi regarding Green's case.

The Assistant United States Attorney ("AUSA") who fielded the call requested that the state authorities "hold off interviewing the suspect until he reviews the case." On October 3, 2005, the Social Security Administration opened an investigation into Green's case. Several weeks later, on either October 17 or 28, 2005, a Special Agent from the Social Security Administration attempted to interview Green. Green, however, declined to waive his right to counsel or speak with the agent. No further attempt was made to contact Green.

On June 21, 2006 Green was indicted on federal charges, and an arrest warrant was issued. On July 28, 2006, Green was arrested and made his initial appearance before the magistrate judge. July 28 marked Green's first time in federal custody for these offenses. Prior to that date, he had remained continuously in state custody.

At a detention hearing on August 1, 2006, the United States learned for the first time that the State of Mississippi had not yet resolved any pending charges against Green.[1] Green confessed detention and waived the hearing. Trial was set for September 5, 2006. On August 4, 2006, Green filed a motion to dismiss his indictment for pre-indictment delay. The district court denied Green's motion, but the trial was not calendared for September 5, 2006, and no new trial date was set. On October 30, 2006, the United States filed a Motion for a Special Trial Setting due to the impending expiration of the speedy trial clock.

On November 8, 2006, Green filed another motion to dismiss the indictment under the Speedy Trial Act. On November 27, 2006, the district court denied Green's motion to dismiss and set a trial date of December 5, 2006. The day before trial, Green notified the Court that he intended to plead guilty

---

[1] According to an exhibit introduced at Green's plea hearing, the State of Mississippi revoked Green's parole on September 14, 2006, retroactive to August 2, 2006.

to the indictment. On December 5, 2006, Green pleaded guilty, and on February 23, 2007, he was sentenced.

## II

Green contends that his indictment should be dismissed under the Speedy Trial Act for two reasons. First, Green argues that the Government's Motion for a Special Trial Setting did not "result" in any pretrial delay and thus did not toll the speedy trial clock under 18 U.S.C. § 3161(h)(1)(F), which stops the speedy trial clock for "delay resulting from any pretrial motion" (emphasis added). Second, Green argues that his speedy trial rights were violated under 18 U.S.C. § 3161(b) because he was not indicted within thirty days from the date of his arrest by Mississippi State authorities, a date which Green seeks to attribute to the United States (or "the Government").

"We review the district court's factual findings supporting its Speedy Trial Act ruling for clear error and its legal conclusions de novo." United States v. Stephens, 489 F.3d 647, 652 (5th Cir. 2007).

## A

The Speedy Trial Act requires that a defendant's trial begin within seventy days from the filing of the information or indictment against the defendant, or from the date of the defendant's initial appearance. 18 U.S.C. § 3161(c)(1); Stephens, 489 F.3d at 652; United States v. Johnson, 29 F.3d 940, 942 (5th Cir. 1994). Certain types of delay, however, are excluded from the calculation of this seventy day period. See 18 U.S.C. § 3161(h). Pursuant to § 3161(h)(1)(F), one such period of excludable delay is "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion. . . ."

Here, the parties agree on the following: If the Government's Motion for a Special Trial Setting stopped the speedy trial clock, then Green's guilty plea timely occurred within the seventy day period prescribed by the Speedy Trial Act. However, if that motion did not toll the speedy trial clock, then the speedy trial clock expired prior to Green's guilty plea, and the Act was violated. Naturally, the issue on which the parties disagree is whether the Government's Motion for a Special Trial Setting actually tolled the speedy trial clock pursuant to § 3161(h)(1)(F). Relying on the language of § 3161(h)(1)(F), Green argues that the motion did not toll the clock because the Government failed to demonstrate that its motion "result[ed]" in any pretrial delay. We reject this argument.

In Henderson v. United States, the Supreme Court described the tolling of the speedy trial clock pursuant to 18 U.S.C. § 3161(h)(1)(F) as "automatic." 476 U.S. 321, 331 (1986). In interpreting and applying Henderson, our sister circuits that have confronted the issue have determined that the tolling of the speedy trial clock under § 3161(h)(1)(F) occurs—as Henderson said—automatically and have not required the Government to prove actual delay. See, e.g., United States v. Vogl, 374 F.3d 976, 985 (10th Cir. 2004); United States v. Titlbach, 339 F.3d 692, 698 (8th Cir. 2003); United States v. Miles, 290 F.3d 1341, 1350 (11th Cir. 2002); United States v. Salimonu, 182 F.3d 63, 68 (1st Cir. 1999); United States v. Springer, 51 F.3d 861, 865 (9th Cir. 1995); United States v. Parker, 30 F.3d 542, 548–49 (4th Cir. 1994); United States v. Arbelaez, 7 F.3d 344, 347 (3d Cir. 1993); United States v. Robinson, 887 F.2d 651, 657 (6th Cir. 1989); United States v. Montoya, 827 F.2d 143, 150–51 (7th Cir. 1987); United States v. Wilson, 835 F.2d 1440, 1443 (D.C. Cir. 1987); United States v. Matsushita, 794 F.2d 46, 50–51 (2d Cir. 1986).[2]

---

[2] Consistent with these cases, we recently emphasized parenthetically that § 3161(h)(1)(F) excludes "delay resulting from any pretrial motion. . . ." Stephens, 489 F.3d at 653 n.9. We also cited parenthetically to a decision of the Ninth Circuit for the proposition that

The Seventh Circuit, after reviewing the legislative history of the Speedy Trial Act, explained:

> From the legislative history two things are clear. One is that Congress did intend the various classifications of excludable delay in §§ 3161(h)(1–7) to be invoked automatically upon proof that the proceedings were pending. The other is that the "delay" referred to is not of the trial itself, but instead of the final date on which the trial must commence. In other words, Congress did not seek to determine the reality of whether or not a particular proceeding interfered with the commencement of trial; it used the word "delay" to denote a period of time during which the speedy trial clock would be stopped and the expiration of the 70-day period thereby postponed. By this means, Congress sought to structure a method of calculating time which would be reasonably and practically, although not necessarily directly, related to the just needs for pretrial preparation in a particular case. . . .
>
> Congress did not intend to saddle the government with proving a causal relationship between another proceeding and its delay in indicting or bringing a defendant to trial each time it seeks an exclusion under section 3161(h)(1). To hold otherwise would create an unnecessary burden of proof on the government. The government need only show the existence of other proceedings under section 3161(h)(1) for the exclusions automatically to become effective.

Montoya, 827 F.2d at 151.

Against this weight of authority, Green relies on dicta from this court's decision in United States v. Bigler, 810 F.2d 1317 (5th Cir. 1987), to support his position that the Government must demonstrate that a motion actually caused pretrial delay before time can be excluded pursuant to § 3161(h)(1)(F). There, the court opined that "[t]he government offers no reason why Bigler's Speedy-Trial-Act motion caused any delay in trial, or, in the language of the statute, why there was any delay 'resulting from' the motion." Bigler, 810 F.2d at 1321.

---

"even frivolous motions stop the clock because the Speedy Trial Act 'does not contain a requirement that the merits of a motion be assessed before a delay is permitted.'" Id. (quoting Springer, 51 F.3d at 865).

However, because the issue was unnecessary to resolve the appeal, the court expressly "pretermit[ed] deciding that question." Id. In denying the Government's subsequent petition for rehearing, the court again expressly reserved judgment on the issue of whether the Government was required to demonstrate that a motion in fact caused any pretrial delay. United States v. Bigler, 817 F.2d 1139, 1141 (5th Cir. 1987). We now decide that issue.

Consistent with the weight and reasoning of the persuasive authority from our sister circuits, and the Supreme Court's decision in Henderson, we hold that under 18 U.S.C. § 3161(h)(1)(F), any pretrial motion, including a motion to set a trial date, tolls the speedy trial clock automatically, and the Government is not required to prove that the motion actually delayed trial.

Applying this rule, we conclude that the Government's October 30, 2006 Motion for a Special Trial Setting automatically tolled the seventy-day speedy trial clock during the pendency of the motion.[3] As Green concedes, because the Government's motion tolled the clock, no speedy trial violation occurred, and we therefore affirm the district court's denial of the defendant's motion to dismiss the indictment on this basis.

## B

Green next argues that the district court erred in denying his motion to dismiss the indictment for pre-indictment delay under 18 U.S.C. § 3161(b).

---

[3] There is no dispute that if the Government's motion tolled the speedy trial clock, which the Court concludes that it did, then the speedy trial clock was tolled for the entire period in which the motion was pending. In a case such as this, where there was no hearing on the motion, "[§ 3161(h)(1)(F)] excludes the time needed for a 'prompt disposition' of the motion, which, under [§ 3161(h)(1)(J)], may be no more than thirty days from the date the motion is taken under advisement." Stephens, 489 F.3d at 656 (citing Johnson, 29 F.3d at 943). The district court resolved the Government's motion on November 27, 2006, well within the thirty-day window of excludable time from the time the motion was taken under advisement, which was—at the earliest—November 14, 2006.

Section 3161(b) provides, in relevant part, that "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges."

This court has explained that

> [t]he Speedy Trial Act does not begin to run when the defendant is arrested by state authorities on state charges, nor does it begin when a federal detainer is lodged with state authorities. Instead, only a federal arrest triggers the start of the time limits set in the Act. Filing a complaint and detainer are not equivalent to a federal arrest. Thus, for the time limit of the Act to commence a person must be held for the purpose of answering to a federal charge.

United States v. Taylor, 814 F.2d 172, 174–75 (5th Cir. 1987) (internal quotation marks, citations, and alterations omitted); see also United States v. Gomez, 776 F.2d 542, 550 (5th Cir. 1985) (explaining that a prior state arrest, "even if based on the same operative facts as a subsequent federal accusation," does not trigger the provisions of the Speedy Trial Act). "This rule is an outgrowth of the doctrine of dual sovereignty, which recognizes that 'the federal government is not bound by the actions of state authorities and that successive state and federal prosecutions are constitutionally permissible.'" United States v. Wilson, 657 F.2d 755, 767 (5th Cir. 1981) (quoting United States v. Phillips, 569 F.2d 1315, 1316–17 (5th Cir. 1978)).

Here, relying on a decision from the Fourth Circuit, United States v. Woolfolk, 399 F.3d 590, 596 (4th Cir. 2005), Green argues that the thirty-day clock prescribed by § 3161(b) began ticking on the date when the federal Government either knew or should have known that Green was being held by state authorities for the purpose of answering federal charges, which Green argues is any of three specific dates in September or October 2005, around the time he first arrived in state custody. Using any of Green's proposed triggering

dates, the thirty-day clock described in § 3161(b) expired well prior to Green's June 21, 2006 indictment.

In Woolfolk, the Fourth Circuit addressed the question of whether an individual being held by state authorities can ever be under "federal arrest" or in "federal custody" and stated that, "in limited circumstances," one can be. 399 F.3d at 595–96. The court reasoned that "something other than actual federal custody and federal arrest" can trigger the Speedy Trial Act, namely, "any restraint resulting from federal action." Id. at 596. Therefore, the court stated: "[W]e believe that a 'restraint resulting from federal action,' sufficient to trigger the time limits of the Speedy Trial Act, occurs when the Government [knew or should have known] that an individual is held by state authorities solely to answer federal charges." Id.

We do not decide whether Woolfolk is correct that there are "limited circumstances" in which an individual held by state authorities may be deemed to be in federal custody. On this record, even assuming for the sake of argument that the standard in Woolfolk applies, the district court correctly concluded that Green failed to satisfy it. Green relies primarily on two facts in support of his argument that the Government knew or should have known that he was being held solely to answer federal charges: The AUSA's request to state authorities to defer interviewing Green until the AUSA had reviewed the case and the initiation of the Social Security Administration investigation into Green's case. As the district court found, neither these nor the other facts alleged by Green are sufficient to bring this case within the parameters of the standard which Green himself proposes; these facts fail to establish either that (a) Green was being held solely to answer federal charges or that (b) even if he was, the Government knew or should have known about it.

Green's arrest by state authorities on state charges did not trigger the Speedy Trial Act, or specifically, the thirty-day clock prescribed by § 3161(b).

Green was indicted by the United States on June 21, 2006 and arrested on July 28, 2006. Because the indictment in this case was filed within thirty days from the date of the defendant's arrest—indeed, it was filed prior to the defendant's arrest—§ 3161(b) was not violated. The district court therefore properly denied Green's motion to dismiss for pre-indictment delay.

III

Green next argues that the pretrial delay in this case violated his rights under the speedy trial clause of the Sixth Amendment to the United States Constitution. "When an appellant claims that the district court incorrectly applied constitutional standards, we review the claim de novo." United States v. Shaw, 920 F.2d 1225, 1228 (5th Cir. 1991).

The speedy trial clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial." U.S. CONST. amend. XI. We have stated that "[i]t will be the unusual case . . . where the time limits under the Speedy Trial Act have been satisfied but the right to a speedy trial under the Sixth Amendment has been violated." United States v. Bieganowski, 313 F.3d 264, 284 (5th Cir. 2002). This case is no exception.

Under the Supreme Court's decision in Barker v. Wingo, 407 U.S. 514 (1972), we must balance four factors in determining whether the defendant received a speedy trial within the meaning of the Sixth Amendment. See Knox v. Johnson, 224 F.3d 470, 477 (5th Cir. 2000). These factors include: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) the prejudice to the defendant. Barker, 407 U.S. at 530. However, as a threshold matter, the defendant must show that the length of the delay is presumptively prejudicial. Id.; Knox, 224 F.3d at 477. "Until there is some delay which is presumptively prejudicial, there is no

necessity for inquiry into the other factors that go into the balance." Barker, 407 U.S. at 530.

> This Court has previously held that a delay of ten and one-half months is not presumptively prejudicial. See United States v. Maizumi, 526 F.2d 848, 851 (5th Cir. 1976). And while neither Barker nor the Constitution itself defines when a delay becomes presumptively unreasonable, we have held that "[a] delay of less than one year will rarely qualify as 'presumptively prejudicial' for purposes of triggering the Barker inquiry." Cowart v. Hargett, 16 F.3d 642, 646 (5th Cir. 1994). As we explained, "[a]bsent extreme prejudice or a showing of willfulness by the prosecution to delay the trial in order to hamper the defense, a delay of less than one year is not sufficient to trigger an examination of the Barker factors." Id. at 647 (internal citations omitted).

Knox, 224 F.3d at 477.

In this case, Green attempts to establish a presumptively prejudicial delay based on the period defined from the date of his arrest by the state authorities on September 11, 2005 to the date of his guilty plea on December 5, 2006, a period of about one year and three months. However, as with the Speedy Trial Act, "[a] prior state arrest . . ., even if based upon the same operative facts as a subsequent federal accusation, does not trigger the sixth amendment right to a speedy trial." Gomez, 776 F.2d at 549. With respect to the United States, Green's arrest on state charges did not trigger the relevant period of delay for Sixth Amendment speedy trial purposes.

Rather, the relevant period for the Sixth Amendment analysis begins on June 21, 2006, the date that Green was indicted by the United States and thus the date he was "officially accused." See United States v. MacDonald, 456 U.S. 1, 6 (1982) (noting that "the Speedy Trial Clause of the Sixth Amendment does not apply to the period before a defendant is indicted, arrested, or otherwise officially accused" (quoting United States v. Marion, 404 U.S. 307, 313 (1971))). The delay from Green's indictment in June 2006 to his guilty plea in December

2006 was only about six months. Green has not shown extreme prejudice based on this delay or any willful delay by the Government. Under these circumstances, Green has failed to show that the six-month delay between his indictment and guilty plea was presumptively prejudicial. Having failed to satisfy this threshold requirement for stating a violation of his Sixth Amendment right to a speedy trial, Green's claim fails.

## IV

Finally, Green asserts generally that he was denied his "Fifth Amendment right to counsel," citing Miranda v. Arizona, 384 U.S. 436 (1966). In this context, "when an accused expresses his desire to speak to police only through counsel, he is not subject to further interrogation until counsel is made available to him, unless the accused initiates further communications with the police." Guidry v. Dretke, 397 F.3d 306, 328 (5th Cir. 2005) (citing Edwards v. Arizona, 451 U.S. 477 (1981)). Here, the record does not reveal that, after invoking his right to counsel, Green was subjected to any further federal interrogation. For this and other reasons, Green's right to counsel claim fails. Green also asserts in a single sentence at the end of his opening brief that he was "never afforded other basic due process rights such as a right to reasonable bail." He elaborates no further on this claim, and as such, we deem this claim waived for inadequate briefing. See, e.g., United States v. Tomblin, 46 F.3d 1369, 1376 n.13 (5th Cir. 1995) (finding waiver where the defendant "makes [an] assertion, but provides no legal argument in his brief that indicates the basis for his contention.").

## V

For the foregoing reasons, WE AFFIRM the judgment of the district court.
AFFIRMED