(Slip Opinion) OCTOBER TERM, 2010 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## UNITED STATES *v.* TINKLENBERG

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

No. 09–1498.   Argued February 22, 2011—Decided May 26, 2011

The Speedy Trial Act of 1974 (Act) provides, *inter alia,* that in "any case in which a plea of not guilty is entered, the trial . . . shall commence within seventy days" after the arraignment, 18 U. S. C. §3161(c)(1), but lists a number of exclusions from the 70-day period, including "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion," §3161(h)(1)(D).

Respondent Tinklenberg's trial on federal drug and gun charges began 287 days after his arraignment. The District Court denied his motion to dismiss the indictment on the ground that the trial violated the Act's 70-day requirement, finding that 218 of the days fell within various of the Act's exclusions, leaving 69 nonexcludable days, thus making the trial timely. On Tinklenberg's appeal from his conviction, the Sixth Circuit agreed that many of the 287 days were excludable, but concluded that 9 days during which three pretrial motions were pending were not, because the motions did not actually cause a delay, or the expectation of delay, of trial. Since these 9 days were sufficient to bring the number of nonexcludable days above 70, the court found a violation of the Act. And given that Tinklenberg had already served his prison sentence, it ordered the indictment dismissed with prejudice.

*Held*:

1. The Act contains no requirement that the filing of a pretrial motion actually caused, or was expected to cause, delay of a trial. Rather, §3161(h)(1)(D) stops the Speedy Trial clock from running automatically upon the filing of a pretrial motion irrespective of whether the motion has any impact on when the trial begins. Pp. 3–12.

Syllabus

(a) The Sixth Circuit reasoned that subparagraph (D)'s "delay resulting from" phrase, read most naturally, requires a court to apply the exclusion provision only to motions that actually cause a trial delay, or the expectation of such a delay. While such a reading is linguistically reasonable, it is not the only reasonable interpretation. The subparagraph falls within a general set of provisions introduced by the phrase: "The following periods of delay shall be excluded." §3161(h). That phrase is followed by a list that includes "[a]ny period of delay resulting from other proceedings concerning the defendant, including. . . ." §3161(h)(1). This latter list is followed by a sublist, each member (but one) of which is introduced by the phrase "delay resulting from . . . ." *Ibid.* Those words are followed by a more specific description, such as "any pretrial motion" from its "filing" "through the conclusion of the hearing on, or other prompt disposition of, such motion." §3161(h)(1)(D). The whole paragraph can be read as requiring the automatic exclusion of the members of that specific sublist, while referring to those members in general as "periods of delay" and as causing that delay, not because Congress intended the judge to determine causation, but because, in a close to definitional way, the words embody Congress' own view of the matter. Thus, language alone cannot resolve the basic question presented. Pp. 4–7.

(c) Several considerations, taken together, compel the conclusion that Congress intended subparagraph (D) to apply automatically. First, subparagraph (D) and neighboring subparagraphs (F) and (H) contain language that instructs courts to measure the time actually consumed by the specified pretrial occurrence, but those subparagraphs do not mention the date on which the trial begins or was expected to begin. Second, during the 37 years since Congress enacted the statute, every other Court of Appeals has rejected the Sixth Circuit's interpretation. Third, the Sixth Circuit's interpretation would make the subparagraph (D) exclusion significantly more difficult to administer, thereby hindering the Act's efforts to secure fair and efficient trials. Fourth, the Court's conclusion is reinforced by the difficulty of squaring the Sixth Circuit's interpretation with the "automatic application" rule expressed in, *e.g., Henderson* v. *United States*, 476 U. S. 321, 327. Fifth, the legislative history also supports the Court's conclusion. Sixth, because all the subparagraphs but one under paragraph (1) begin with the phrase "delay resulting from," the Sixth Circuit's interpretation would potentially extend well beyond pretrial motions and encompass such matters as mental and physical competency examinations, interlocutory appeals, consideration of plea agreements, and the absence of essential witnesses. Pp. 7–12.

2. The Sixth Circuit also misinterpreted §3161(h)(1)(F), which excludes from the 70-day calculation "delay resulting from transporta-

Syllabus

tion of any defendant . . . to and from places of examination . . . , except that any time consumed in excess of ten days . . . shall be presumed to be unreasonable." The lower courts agreed that a total of 20 transportation days had elapsed when Tinklenberg was evaluated for competency, and that because the Government provided no justification, all days in excess of the 10 days specified in the statute were unreasonable. However, the Sixth Circuit exempted 8 weekend days and holidays from the count on the theory that subparagraph (F) incorporated Federal Rule of Criminal Procedure 45(a), which, at the time, excluded such days when computing any period specified in "rules" and "court order[s]" that was less than 11 days. Thus, the Circuit considered only two transportation days excessive, and the parties concede that the eight extra days were enough to make the difference between compliance with, and violation of, the Act.

  This Court exercises its discretion to consider the subsidiary subparagraph (F) question because doing so is fairer to Tinklenberg, who has already served his sentence. In the Court's view, subparagraph (F) does not incorporate Rule 45. The Act does not say that it does so, the Government gives no good reason for such a reading, and the Rule itself, as it existed at the relevant time, stated it applied to rules and court orders, but said nothing about statutes. The fact that Rule 45 is revised from time to time also argues against its direct application to subparagraph (F) because such changes, likely reflecting considerations other than those related to the Act, may well leave courts treating similar defendants differently. The better reading includes weekend days and holidays in subparagraph (F)'s 10-day period under the common-law rule that such days are included when counting a statutory time period of 10 days unless a statute specifically excludes them. Many courts have treated statutory time periods this way, and Congress has tended specifically to exclude weekend days and holidays from statutory time periods of 10 days when it intended that result. Indeed, Rule 45 has been recently modified to require a similar result. Pp. 12–14.

  3. Although the Sixth Circuit's interpretations of subparagraphs (D) and (F) are both mistaken, the conclusions the court drew from its interpretations in relevant part cancel each other out, such that the court's ultimate conclusion that Tinklenberg's trial failed to comply with the Act's deadline is correct. Pp. 14–15.

579 F. 3d 589, affirmed.

  BREYER, J., delivered the opinion of the Court, in which KENNEDY, GINSBURG, ALITO, and SOTOMAYOR, JJ., joined, and in which ROBERTS, C. J., and SCALIA and THOMAS, JJ., joined as to Parts I and III. SCALIA, J., filed an opinion concurring in part and concurring in the judgment,

Syllabus

in which ROBERTS, C. J., and THOMAS, J., joined.  KAGAN, J., took no part
in the consideration or decision of the case.

NOTICE: This opinion is subject to formal revision before publication in the
preliminary print of the United States Reports.  Readers are requested to
notify the Reporter of Decisions, Supreme Court of the United States, Wash-
ington, D. C. 20543, of any typographical or other formal errors, in order
that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 09–1498

## UNITED STATES, PETITIONER *v.* JASON LOUIS TINKLENBERG

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE SIXTH CIRCUIT

[May 26, 2011]

JUSTICE BREYER delivered the opinion of the Court.

The Speedy Trial Act of 1974, 18 U. S. C. §3161 *et seq.*, provides that in "any case in which a plea of not guilty is entered, the trial . . . shall commence within seventy days" from the later of (1) the "filing date" of the information or indictment or (2) the defendant's initial appearance before a judicial officer (*i.e.*, the arraignment).  §3161(c)(1).  The Act goes on to list a set of exclusions from the 70-day period, including "*delay resulting from* any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion."  §3161(h)(1)(D) (2006 ed., Supp. III) (emphasis added).

The United States Court of Appeals for the Sixth Circuit held in this case that a pretrial motion falls within this exclusion only if it "actually cause[s] a delay, or the expectation of a delay, of trial."  579 F. 3d 589, 598 (2009).  In our view, however, the statutory exclusion does not contain this kind of causation requirement.  Rather, the filing of a pretrial motion falls within this provision irrespective of whether it actually causes, or is expected to cause, delay

in starting a trial.

## I

Jason Louis Tinklenberg, the respondent, was convicted of violating federal drug and gun laws. 18 U. S. C. §922(g)(1) (felon in possession of a firearm); 21 U. S. C. §843(a)(6) (possession of items used to manufacture a controlled substance). He made his initial appearance before a judicial officer on October 31, 2005, and the Speedy Trial clock then began to run. His trial began on August 14, 2006, 287 days later. Just before trial, Tinklenberg asked the District Court to dismiss the indictment on the ground that the trial came too late, violating the Speedy Trial Act's 70-day requirement. The District Court denied the motion after finding that 218 of the 287 days fell within various Speedy Trial Act exclusions, leaving 69 nonexcludable days, thereby making the trial timely.

On appeal the Sixth Circuit agreed with the District Court that many of the 287 days were excludable. But it disagreed with the District Court about the excludability of time related to three pretrial motions. The Government filed the first motion, an unopposed motion to conduct a video deposition of a witness, on August 1, 2006; the District Court disposed of the motion on August 3, 2006. The Government filed the second motion, an unopposed motion to bring seized firearms into the courtroom as evidence at trial, on August 8, 2006; the District Court disposed of the motion on August 10, 2006. Tinklenberg filed the third motion, a motion to dismiss the indictment under the Speedy Trial Act, on August 11, 2006; the District Court denied that motion on August 14, 2006. In the Sixth Circuit's view, the nine days during which the three motions were pending were not excludable because the motions did not "actually cause a delay, or the expectation of delay, of trial." 579 F. 3d, at 598. Because these 9 days

were sufficient to bring the number of nonexcludable days above 70, the Court of Appeals found a violation of the Act. And given the fact that Tinklenberg had already served his prison sentence, it ordered the District Court to dismiss the indictment with prejudice.

We granted certiorari at the Government's request in order to review the Sixth Circuit's motion-by-motion causation test. We now reverse its determination. But because we agree with the defendant about a subsidiary matter, namely, the exclusion of certain holidays and weekend days during the period in which he was transported for a competency examination, *id.*, at 597, we affirm the Court of Appeals' ultimate conclusion.

## II

### A

In relevant part the Speedy Trial Act sets forth a basic rule:

> "In any case in which a plea of not guilty is entered, the trial of a defendant . . . shall commence within seventy days from [the later of (1)] the filing date . . . of the information or indictment, or . . . [(2)] the date the defendant has appeared before a judicial officer of the court in which such charge is pending . . . ." §3161(c)(1) (2006 ed.).

The Act then says that the "following periods of delay shall be excluded in computing . . . the time within which the trial . . . must commence." §3161(h) (2006 ed., Supp. III). It lists seven such "periods of delay."

It describes the first of these seven excludable periods as

> "(1) Any period of *delay resulting from* other proceedings concerning the defendant including but not limited to—
>
>     "(A) *delay resulting from* any proceeding . . . to determine the mental competency or physical capacity of

the defendant;

"(B) *delay resulting from* trial with respect to other charges . . . ;

"(C) *delay resulting from* any interlocutory appeal;

"(D) *delay resulting from* any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion;

"(E) *delay resulting from* any proceeding relating to the transfer of a case [or defendant] . . . from another district . . . ;

"(F) *delay resulting from* transportation of any defendant from another district, or to and from places of examination or hospitalization, except that any time consumed in excess of ten days . . . shall be presumed to be unreasonable;

"(G) *delay resulting from* consideration by the court of a proposed plea agreement . . .;

"(H) delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court." *Ibid.* (2006 ed. and Supp. III) (emphasis added).

## B

The particular provision before us, subparagraph (D), excludes from the Speedy Trial period "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." §3161(h)(1)(D). The question is whether this provision stops the Speedy Trial clock from running automatically upon the filing of a pretrial motion irrespective of whether the motion has any impact on when the trial begins. Unlike the Sixth Circuit, we believe the answer to this question is yes.

We begin with the Act's language. The Sixth Circuit

based its answer primarily upon that language. It argued that the phrase "delay resulting from," read most naturally, requires a court to apply the exclusion provision only to those "motion[s]" that "actually cause a delay, or the expectation of a delay, of trial." 579 F. 3d, at 598. We agree that such a reading is linguistically reasonable, but the Court of Appeals wrote that there "is no conceivable way to read this language other than to require a delay to *result* from any pretrial motion before excludable time occurs." *Ibid.* See also *ibid.* ("[T]he statute is clear"). And here we disagree.

When the Court of Appeals says that its reading is the *only* way any reasonable person could read this language, it overstates its claim. For one thing, even though the word "delay" ordinarily indicates a postponement, it need not inevitably do so. Compare The American Heritage Dictionary 480 (4th ed. 2000) ("[t]o postpone until a later time" or "[t]o cause to be later or slower than expected or desired") with *ibid.* ("[t]he interval of time between two events"). In any event, terms must be read in their statutory context in order to determine how the provision in question should be applied in an individual case.

Statutory language that describes a particular circumstance, for example, might require a judge to examine each individual case to see if that circumstance is present. But, alternatively, it might ask a judge instead to look at more general matters, such as when a statute requires a judge to increase the sentence of one convicted of a "crime of violence" without requiring the judge to determine whether the particular crime at issue in a particular case was committed in a violent manner. See *Taylor* v. *United States*, 495 U. S. 575, 602 (1990) ("crime of violence" characterizes the generic crime, not the particular act committed). Similarly a statute that forbids the importation of "wild birds" need not require a court to decide whether a particular parrot is, in fact, wild or domesticated. It may

intend to place the entire species within that definition without investigation of the characteristics of an individual specimen. See *United States* v. *Fifty-Three (53) Eclectus Parrots*, 685 F. 2d 1131, 1137 (CA9 1982).

More than that, statutory language can sometimes specify that a set of circumstances exhibits a certain characteristic virtually as a matter of definition and irrespective of how a court may view it in a particular case. A statute that describes "extortion" as a "crime of violence" makes that fact so by definition, without asking a court to second-guess Congress about the matter. 18 U. S. C. §924(e)(2)(B)(ii) (2006 ed.) (defining "violent felony" to include extortion for purposes of the Armed Career Criminal Act).

The statute before us, though more complex, can be read similarly. The pretrial motion subparagraph falls within a general set of provisions introduced by the phrase: "The following periods of delay shall be excluded." §3161(h) (2006 ed., Supp. III). That phrase is then followed by a list that includes "[a]ny period of delay resulting from other proceedings concerning the defendant, including . . . ." §3161(h)(1). This latter list is followed by a sublist, each member (but one) of which is introduced by the phrase "delay resulting from . . . ," *ibid.* (2006 ed. and Supp. III), which words are followed by a more specific description, such as "any pretrial motion" from its "filing" "through the conclusion of the hearing on, or other prompt disposition of, such motion." §3161(h)(1)(D) (2006 ed., Supp. III). The whole paragraph can be read as requiring the automatic exclusion of the members of that specific sublist, while referring to those members in general as "periods of delay" and as causing that delay, not because Congress intended the judge to determine causation, but because, in a close to definitional way, the words embody Congress' own view of the matter.

It is not farfetched to describe the members of the spe-

cific sublist in the statute before us in this definitional sense—as "periods of delay" or as bringing about delay. After all, the exclusion of any of the specific periods described always delays the expiration of the 70-day Speedy Trial deadline. Or Congress might have described the specific periods listed in paragraph (1) as "periods of delay" and "delay[s] resulting from" simply because periods of the type described often do cause a delay in the start of trial. Both explanations show that, linguistically speaking, one can read the statutory exclusion as automatically applying to the specific periods described without leaving to the district court the task of determining whether the period described would or did actually cause a postponement of the trial in the particular case. Thus, language alone cannot resolve the basic question presented in this case. But when read in context and in light of the statute's structure and purpose, we think it clear that Congress intended subparagraph (D) to apply automatically.

C

We now turn to several considerations, which, taken together, convince us that the subparagraphs that specifically list common pretrial occurrences apply automatically in the way we have just described. First, subparagraph (D) clarifies that the trial court should measure the period of excludable delay for a pretrial motion "from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of such motion," but nowhere does it mention the date on which the trial begins or was expected to begin. §3161(h)(1)(D) (2006 ed., Supp. III). Thus, it is best read to instruct measurement of the time actually consumed by consideration of the pretrial motion. Two other related subparagraphs contain clarifying language that contemplates measurement of the time actually consumed by the specified pretrial occurrence without regard to the commencement of the trial. See

§3161(h)(1)(F) ("Any time consumed in excess of ten days from the date an order of removal or an order directing such transportation, and the defendant's arrival at the destination shall be presumed to be unreasonable"); §3161(h)(1)(H) ("delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court"). If "delay" truly referred to the postponement of trial, then presumably those subparagraphs would instruct that excludable periods should be measured from the date that trial was otherwise scheduled to begin.

Second, we are impressed that during the 37 years since Congress enacted the Speedy Trial Act, every Court of Appeals has considered the question before us now, and every Court of Appeals, implicitly or explicitly, has rejected the interpretation that the Sixth Circuit adopted in this case. See *United States* v. *Wilson*, 835 F. 2d 1440, 1443 (CADC 1987) (explicit), abrogated on other grounds by *Bloate* v. *United States*, 559 U. S. ___ (2010); *United States* v. *Hood*, 469 F. 3d 7, 10 (CA1 2006) (explicit); *United States* v. *Cobb*, 697 F. 2d 38, 42 (CA2 1982) (explicit), abrogated on other grounds by *Henderson* v. *United States*, 476 U. S. 321 (1986); *United States* v. *Novak*, 715 F. 2d 810, 813 (CA3 1983) (explicit) abrogated on other grounds by *Henderson* v. *United States*, 476 U. S. 321 (1986); *United States* v. *Dorlouis*, 107 F. 3d 248, 253–254 (CA4 1997) (explicit); *United States* v. *Green*, 508 F. 3d 195, 200 (CA5 2007) (explicit); *United States* v. *Montoya*, 827 F. 2d 143, 151 (CA7 1987) (explicit); *United States* v. *Titlbach*, 339 F. 3d 692, 698 (CA8 2003) (implicit); *United States* v. *Van Brandy*, 726 F. 2d 548, 551 (CA9 1984) (explicit); *United States* v. *Vogl*, 374 F. 3d 976, 985–986 (CA10 2004) (explicit); *United States* v. *Stafford*, 697 F. 2d 1368, 1371–1372 (CA11 1983) (explicit). This unanimity among the lower courts about the meaning of a statute of

great practical administrative importance in the daily
working lives of busy trial judges is itself entitled to strong
consideration, particularly when those courts have main-
tained that interpretation consistently over a long a period
of time. See *General Dynamics Land Systems, Inc.* v.
*Cline*, 540 U. S. 581, 593–594 (2004).

Third, the Sixth Circuit's interpretation would make the
subparagraph (D) exclusion significantly more difficult to
administer. And in doing so, it would significantly hinder
the Speedy Trial Act's efforts to secure fair and efficient
criminal trial proceedings. See *Zedner* v. *United States*,
547 U. S. 489, 497 (2006) (noting that the Act's exceptions
provide "necessary flexibility"); H. R. Rep. No. 93–1508, p.
15 (1974) (the Act seeks to achieve "efficiency in the proc-
essing of cases which is commensurate with due process");
S. Rep. No. 93–1021, p. 21 (1974). Trial judges may, for
example, set trial dates beyond 70 days in light of other
commitments. And in doing so, a trial judge may well be
aware, based on his or her experience, that pretrial mo-
tions will likely consume the extra time—even though the
judge may know little about which specific motions will be
filed, when, and how many. How is that judge to apply the
Sixth Circuit's approach, particularly when several, in-
cluding unanticipated, pretrial proceedings did consume
the time in question?

Moreover, what is to happen if several excludable and
several nonexcludable potential causes of delay (*e.g.,* pre-
trial motions to take depositions, potential scheduling
conflicts, various health examinations, etc.) coincide,
particularly in multidefendant cases? Can the judge,
motion by motion, decide which motions were responsible
and which were not responsible for postponing what oth-
erwise might have been an earlier trial date? And how is
a defendant or his attorney to predict whether or when a
judge will later find a particular motion to have caused a
postponement of trial? And if the matter is difficult to

predict, how is the attorney to know when or whether he or she should seek further postponement of the 70-day deadline?

With considerable time and judicial effort, perhaps through the use of various presumptions, courts could find methods for overcoming these and other administrative difficulties. In some instances, the judge may know at the time of filing that a given motion is easily resolved or that its complexity will almost certainly postpone the trial. Judges could note on the record their predictions about whether the motion will postpone trial at the time that the motion is filed. Parties could also stipulate as to whether a given motion would be excluded from the Speedy Trial clock. But those theoretical strategies would not prevent all or even most mistakes, needless dismissals of indictments, and potential retrials after appeal—all of which exact a toll in terms of the fairness of and confidence in the criminal justice system. And any such future strategies for administering the Sixth Circuit's rule cannot provide a present justification for turning the federal judicial system away from the far less obstacle-strewn path that the system has long traveled.

Fourth, we are reinforced in our conclusion by the difficulty of squaring the Sixth Circuit's interpretation with this Court's precedent. In *Henderson* v. *United States*, 476 U. S. 321 (1986), the Court rejected the contention that the exclusion provision for pretrial motions governs only reasonable delays. The Court there concluded (as the Court of Appeals had held) that the exclusion "was intended to be automatic." *Id.*, at 327 (quoting *United States* v. *Henderson,* 746 F. 2d 619, 622 (CA9 1984); internal quotation marks omitted). See also *Bloate* v. *United States*, 559 U. S. ___ (2010) (holding based in part on the view that the exclusion applies *"automatically"* to the specified period of delay). *Henderson* did not consider whether a trial court must determine whether the pretrial

motion actually caused postponement of the trial in each individual case. But the Sixth Circuit's interpretation would nonetheless significantly limit the premise of "automatic application" upon which the case rests.

Fifth, for those who find legislative history useful, it is worthwhile noting, (as this Court noted in *Henderson*) that the Senate Report concerning the reenactment of the provision in 1979 described it, along with the other provisions in §3161(h)(1), as referring to "specific and recurring periods of time often found in criminal cases," and characterized them as "automatically excludable delay," S. Rep. No. 96–212, p. 9 (1979). See H. R. Rep. No. 93–1508, at 21 ("The time limits would be tolled by hearings, proceedings and necessary delay which *normally occur* prior to the trial of criminal cases" (emphasis added)); S. Rep. No. 93– 1021, at 21 ("[The Act] has carefully constructed exclusions and exceptions which permit normal pre-trial preparation in the ordinary noncomplex cases which represent the bulk of business in the Federal courts"). But cf. *id.*, at 35 (paragraph (h)(1) excludes "[d]elays *caused by* proceedings relating to the defendant" (emphasis added)).

Sixth, because all the subparagraphs but one under paragraph (1) begin with the phrase "delay resulting from," the Sixth Circuit's interpretation would potentially extend well beyond pretrial motions and encompass such matters as mental and physical competency examinations, interlocutory appeals, consideration of plea agreements, and the absence of essential witnesses. See §3161(h)(1) (2006 ed., Supp. III); §3161(h)(3)(A) (2006 ed.). Given the administrative complexity the causation requirement would bring about in all these areas, those Circuits that have considered a causation requirement in respect to these other matters have rejected it. See, *e.g.*, *United States* v. *Pete*, 525 F. 3d 844, 852 (CA9 2008) (interlocutory appeal); *United States* v. *Miles*, 290 F. 3d 1341, 1350 (CA11 2002) (unavailability of essential witnesses); *United*

*States* v. *Robinson*, 887 F. 2d 651, 656–657 (CA6 1989) (trial on other charges). That further complexity, along with these lower court holdings, reinforce our conclusion.

We consequently disagree with the Sixth Circuit that the Act's exclusion requires a court to find that the event the exclusion specifically describes, here the filing of the pretrial motion, actually caused or was expected to cause delay of a trial. We hold that the Act contains no such requirement.

## III

Tinklenberg also argues that the Sixth Circuit wrongly interpreted a different exclusion provision, this time the provision excluding

> "delay resulting from transportation of any defendant from another district, or to and from places of examination or hospitalization, *except that any time consumed in excess of ten days* from the date an order of removal or an order directing such transportation, and the defendant's arrival at the destination *shall be presumed to be unreasonable.*" §3161(h)(1)(F) (2006 ed., Supp. III) (emphasis added).

The District Court granted Tinklenberg's request for a competency evaluation and he was transported to a medical facility for examination. The lower courts agreed that a total of 20 transportation days elapsed and that since the Government provided no justification, all days in excess of the 10 days specified in the statute were unreasonable. But in counting those excess days, the court exempted weekend days and holidays. Since Veterans Day, Thanksgiving Day, and three weekends all fell within the 20-day period, only 2 days, not 10 days, were considered excessive, during which the 70-day Speedy Trial Act clock continued to tick.

Tinklenberg argues that subparagraph (F) does not

exempt weekend days and holidays; hence the court should have considered 10, not 2, days to be excessive. And the parties concede that those 8 extra ticking days are enough to make the difference between compliance with, and violation of, the Act.

As the Solicitor General notes, we may consider, or "decline to entertain," alternative grounds for affirmance. See *United States* v. *Nobles*, 422 U. S. 225, 242, n. 16 (1975). In this case, we believe it treats Tinklenberg, who has already served his sentence, more fairly to consider the alternative ground and thereby more fully to dispose of the case.

The Sixth Circuit exempted weekend days and holidays because it believed that subparagraph (F) incorporated Federal Rule of Criminal Procedure 45(a). At the relevant time, that Rule excluded weekend days and holidays when computing any period of time specified in the "rules," in "any local rule," or in "any court order" that was less than 11 days. Fed. Rule Crim. Proc. 45(a) (2005). But in our view subparagraph (F) does not incorporate Rule 45. The Act does not say that it incorporates Rule 45. The Government has given us no good reason for reading it as incorporating the Rule. And the Rule itself, as it existed at the relevant time, said that it applied to "rules" and to "orders," but it said nothing about statutes. Other things being equal, the fact that Rule 45 is revised from time to time also argues against its direct application to subparagraph (F). That is because those changes, likely reflecting considerations other than those related to the Speedy Trial Act, may well leave courts treating similar defendants differently.

Without relying upon a cross-reference to Rule 45, we believe the better reading of subparagraph (F) would include weekend days and holidays in its 10-day time period. Under the common-law rule, weekend days and holidays are included when counting a statutory time

period of 10 days unless the statute specifically excludes them. See 74 Am. Jur. 2d, Time §22, p. 589 (2001) (in calculating time periods expressed in statutes, "when the time stipulated must necessarily include one or more Saturdays, Sundays, or holidays, those days will not be excluded, in the absence of an express proviso for their exclusion"). Many courts have treated statutory time periods this way. See, *e.g.*, *Howeisen* v. *Chapman*, 195 Ind. 381, 383–384, 145 N. E. 487, 488 (1924); *American Tobacco Co.* v. *Strickling*, 88 Md. 500, 508–511, 41 A. 1083, 1086 (1898). And Congress has tended specifically to exclude weekend days and holidays from statutory time periods of 10 days when it intended that result. Compare 18 U. S. C. §3142(d)(2) (permitting the temporary detention of certain defendants "for a period of not more than ten days, excluding Saturdays, Sundays, and holidays") and 5 U. S. C. §552a(d)(2)(A) (requiring an agency to acknowledge receipt of a request to amend agency records within "10 days (excluding Saturdays, Sundays, and legal public holidays)") with 18 U. S. C. §2518(9) (establishing a 10-day period for disclosing applications for and court orders authorizing wiretaps without specifically excluding weekends and holidays) and §4244(a) (providing a 10-day period after conviction for filing a motion to request mental health treatment without specifically excluding weekends and holidays). Indeed, Rule 45 has been recently modified so that now (though not at the time of Tinklenberg's proceedings) it requires a similar result. Fed. Rule Crim. Proc. 45(a)(1) (2010) (instructing that weekend days and holidays are to be counted when calculating all time periods, including statutory time periods for which no alternative method of computing time is specified).

\*     \*     \*

We disagree with the Sixth Circuit's interpretation of both subparagraph (D) and subparagraph (F), and now

Opinion of the Court

hold that its interpretations of those two provisions are mistaken. Nonetheless the conclusions the court drew from those two interpretations in relevant part cancel each other out such that the court's ultimate conclusion that Tinklenberg's trial failed to comply with the Speedy Trial Act's deadline is correct. Therefore, the Sixth Circuit's judgment ordering dismissal of the indictment on remand is

*Affirmed.*

JUSTICE KAGAN took no part in the consideration or decision of this case.

# SUPREME COURT OF THE UNITED STATES

No. 09–1498

UNITED STATES, PETITIONER *v.* JASON LOUIS TINKLENBERG

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

[May 26, 2011]

JUSTICE SCALIA, with whom THE CHIEF JUSTICE and JUSTICE THOMAS join, concurring in part and concurring in the judgment.

I join Parts I and III of the Court's opinion. I agree with the judgment of the Court in Part II that a pretrial motion need not actually postpone a trial, or create an expectation of postponement, in order for its pendency to be excluded under the Speedy Trial Act of 1974, 18 U. S. C. §3161(h)(1)(D) (2006 ed., Supp. III). But I think that conclusion is entirely clear from the text of the Speedy Trial Act, and see no need to look beyond the text. The clarity of the text is doubtless why, as the Court's opinion points out, *ante*, at 8, every Circuit disagrees with the Sixth Circuit's conclusion. That is the direction in which the causality proceeds: Clarity of text produces unanimity of Circuits—not, as the Court's opinion would have it, unanimity of Circuits clarifies text.

As the Court discusses, *ante*, at 5, the word "delay" can mean postponement, but it can also mean an "interval of time between two events." American Heritage Dictionary 480 (4th ed. 2000). One might refer to the "delay" between two ticks of a clock, or between seeing lightning and hearing thunder, but that does not imply that the first postponed or slowed the second. Here there are substantial textual indications that the word "delay" similarly refers

to the period between ticks of the speedy trial clock—in other words, the period during which the Speedy Trial Act's 70-day requirement is tolled.

Interpreting the "delay" referred to in §3161(h)(1)(D) (or referred to anywhere else in §3161(h)) as the delay of a trial date* would make little sense in light of the context of the provision and the structure of the statute. Section 3161(h)(1)(D) specifies starting and stopping points for the excludable "delay" that bear no relation whatsoever to the actual amount of time that a trial might be postponed by a pretrial motion. It equates the "delay resulting from any pretrial motion" to the period of time between "the filing of the motion" and "the conclusion of the hearing on, or other prompt disposition of, such motion." This equation is possible if "delay" refers to an interval of time excludable for purposes of the Speedy Trial Act, but it makes no sense if "delay" refers to the time a trial is postponed. Consider, for example, a pretrial motion that is pending for 10 days but causes the district court to push back a trial's beginning by only one day. In such a situation, §3161(h)(1)(D) would require that the entire 10-day period be excluded for Speedy Trial Act purposes.

Neighboring statutory provisions, moreover, link the excludable "delay" to the time consumed by the specified event, not the number of days a trial is postponed. Section 3161(h)(1)(H), for example, excludes "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court." And §3161(h)(1)(F) excludes "delay resulting from transporta-

———————

*I consider only this possibility, and not the extended meaning invented by the Sixth Circuit ("expectation of a dela[y] of trial")— presumably to explain how delay can be computed *ex ante*, before any trial delay has actually occurred. See 579 F. 3d 589, 598 (2009). "[E]xpectation of a delay" is simply not one of the possible meanings of "delay."

tion . . . except that any time consumed in excess of ten days from . . . an order directing such transportation, and the defendant's arrival at the destination shall be presumed to be unreasonable." If "delay" means trial delay, it makes little sense for Congress to have placed a limit upon the "time consumed" in transporting a defendant rather than upon the permissible postponement of trial date.

The Speedy Trial Act's structure also suggests that §3161(h)(1)(D) is meant to apply automatically and is not dependent on predicate findings of postponement. Section 3161(h) lists various types of delay that may be excluded, the first six of which (including §3161(h)(1)(D)) make no reference to any required findings. But the seventh, which excludes "delay resulting from a continuance granted by any judge," conditions that exclusion upon certain findings, §3161(h)(7)(A). In light of this difference in formulation, we have held that the first six exclusions are "'automatic,'" apply "regardless of the specifics of the case," and require no district-court findings. *Bloate* v. *United States*, 559 U. S. \_\_\_, \_\_\_, n. 1, \_\_\_ (2010) (slip op., at 1, n. 1, 6); see also *Henderson* v. *United States*, 476 U. S. 321, 327 (1986). Tinklenberg's incorporation of a threshold inquiry into §3161(h)(1)(D) would make it none of these things.

Delay of trial is also ruled out by the fact that the text is forward looking. It says that the "following periods of delay shall be excluded in computing . . . the time within which the trial . . . *must commence*." §3161(h) (emphasis added). This is designed to enable the determination *in advance* of the date by which the trial "must commence." Quite obviously, if the specified delays did not count unless and until they delayed the trial, one could not know whether they counted until after the fact. And on that interpretation the provision should have read, not "the time within which the trial . . . must commence," but rather "the time within which the trial . . . should have commenced."

And finally, there are the administrative difficulties that arise when "delay" is taken to mean "delay in trial," discussed in the Court's opinion at pages 9–10. These are not relevant on their own, but only because they bear upon the meaning of the text. When one of two possible meanings yields impracticable results, the other meaning is more likely correct.

Tinklenberg would invent a threshold inquiry applicable only to §3161(h)(1)(D): If, he says, at least some delay of the trial date has occurred, then the entire period specified in §3161(h)(1)(D) may be excluded. This makes no sense. First, nothing in the statute supports treating the word "delay" as a trigger for an exclusion of an unrelated period of time; quite the opposite, §3161(h)(1)(D) treats the period of "delay" and the pendency of the pretrial motion equivalently. Second, that interpretation would ascribe different meanings to the word "delay" as it is used throughout the Speedy Trial Act. "[D]elay resulting from any interlocutory appeal," §3161(h)(1)(C), for example, would refer to the number of days a trial was postponed; but "delay resulting from any pretrial motion," §3161(h)(1)(D), would refer to the different period specified in that paragraph. Identical words used in different parts of a statute are presumed to have the same meaning absent indication to the contrary, and here no such indication exists. See *IBP, Inc.* v. *Alvarez*, 546 U. S. 21, 34 (2005).

Tinklenberg also argues that his interpretation draws support from the phrase "resulting from," which appears after the word "delay" in §3161(h)(1)(D). He asserts that this phrase "underscores that Subsection (D) excludes periods of delay that occur *as a consequence of* pretrial motions, not merely the time during which such motions are pending." Brief for Respondent 17. That is true enough, but it sheds no light on the meaning of the word "delay." Cf. *Bloate, supra,* at ___, n. 9 (slip op., at 8, n. 9). There is nothing odd in saying that an interval of exclud-

able time under §3161(h)(1)(D) arises "as a consequence" of a party's having filed a pretrial motion; if no pretrial motion is filed, no delay results.